## JAMES A. HALEY v. ALICE H. OGILVIE et al.

Middle Section.    March 6, 1926.

Certiorari denied by Supreme Court, June 5, 1926.

1. **Courts. Jurisdiction. Wills. The jurisdiction of the circuit court to try a will case is original and not appellate.**
    The jurisdiction of the circuit court to try the issue of devisavit vel non upon the contestation of a will, is original and not appellate.

2. **Wills. Revocation. If testator commits an act intending to destroy a will and he thinks he has done so, it is a sufficient revocation.**

If a testator tells another party to destroy his will and he believes he has done so, or if he himself attempts to destroy the will and does not do so, although he believes he has destroyed it, held that such acts are sufficient to constitute a revocation.

3. **Trials. Instructions. Wills. Instruction that testator must acknowledge to subscribing witnesses that paper signed by him was his will is erroneous.**

In a will contest where the jury were instructed that the proponents must show that the testator acknowledged to the subscribing witnesses that the paper writing signed by him and attested by them was his will, held erroneous.

4. **Trial. Instructions. Erroneous instruction which could not affect the result of the trial is not reversible error.**

The appellate court will reverse a judgment only when from an examination of the entire record it affirmatively appears that the error has affected the result of the trial.

5. **Appeal and error. Case will not be reversed because of erroneous instruction on one point if there is sufficient evidence to sustain the verdict of the jury on another.**

In a will contest where it was insisted first, that the testator was not competent to make a will, and secondly, that the will was not properly executed, held that the cause would not be reversed because of erroneous instruction on the execution of the will if there was sufficient testimony on the lack of mental capacity to support the verdict.

6. **Wills. Evidence. Evidence held to show testator mentally incompetent to make a will.**

In an action to contest a will where the evidence showed that the testator was more than ninety years old at the time of drawing the will, that the contested will was his fourth will and that he was very forgetful and had senile dementia, taken together with the unjustness of the will, held evidence sufficient for the jury to find that testator was mentally incompetent to make a will.

7. **Will. Reasonableness of will is a circumstance to be considered in determining mental capacity of testator.**

The making of an unjust will is not necessarily an irrational or invalid act. The fact that the testator makes an apparently unjust discrimination between his children is merely a circumstance to be considered with other evidence tending to show undue influence or want of mental capacity.

8. **Words and phrases. "Duly executed" as applied to will, defined.**

The term "duly executed" as applied to wills involves the testamentary capacity and undue influence.

9. **Wills. It is proper for the jury to determine whether or not a will has been duly executed.**

In an action to contest a will where the questions of testamentary capacity and undue influence were involved, it was proper for the jury to determine whether or not the will had been duly executed. Under such issues the term "duly executed" involves testamentary capacity and undue influence both of which were for determination by the jury.

10. **Appeal and error. Mere omission of a court to charge is not reversible error in a civil case.**

Mere omission in the court's charge is not reversible error in a civil case where no request for proper and accurate instructions was made in the court below. Mere meagerness of the charge is not ground for reversal when no such request for additional instructions was made by counsel.

11. **Trial. Instructions. Instruction containing reference to discrimination against one child in favor of another not erroneous where the issue was not in the case.**

In an action to contest a will where there was no controversy over the meaning of the will and it was not disputed that it purported to discriminate against one child in favor of another, held that an instruction referring to the discrimination against one child in favor of another did not invade the province of the jury since this question was not before the jury.

Appeal in Error from Circuit Court, Williamson County; Hon. J. C. Hobbs, Judge.

Affirmed.

Roy H. Parks, of Lynchburg, and Wiseman & Knott, of Murfreesboro, for plaintiff in error.

J. C. Eggleston, Wallace J. Smith, and E. W. Eggleston, of Franklin, for defendants in error.

DeWITT, J. This cause involves the validity of the will of Robt. H. Haley, dated October 20, 1922. The testator died on September 27, 1923, lacking seven days of the completion of his 94th year. The contest arose between his daughter, Mrs. Alice Ogilvie, the contestant, and her elder half brother, Jas. A. Haley, who died pending this suit. The contestant was dissatisfied with the provisions of item one of the will purporting to devise the realty, which item is as follows:

"I will to my son, Jas. Haley, and to my daughter, Alice Ogilvie, the farm on which I now reside, and after my death the farm is to be appraised by three disinterested men, and my daughter, Alice Ogilvie, is to pay to my son, Jas. A. Haley, half of the valuation set by the appraisement committee on said farm, and it is to be hers during the term of her natural life for her sole use and benefit, and at her death, should she die without bodily heirs, it is to go to Jas. A. Haley or his body heirs."

The will provided that after the payment of debts and burial expenses out of the personal property, the balance should be divided equally between the said two children.

The issue of devisavit vel non was tried in the circuit court before a jury and the jury returned a verdict against the validity of the will. Motion for a new trial was duly entered and was overruled, whereupon an appeal in the nature of a writ of error was granted and the proponents of the will perfected said appeal and have assigned errors, which will be disposed of in this opinion.

Upon the first day of the term of the circuit court, following the filing in said court of a transcript of the record of the proceedings in the county court, Jas. A. Haley, administrator ad litem and proponent of the will, moved the court to dismiss the petition filed in

the county court to set aside the will and to remand the cause to the county court, because said petition was insufficient in law in that it appeared from the allegations therein that the paper writing purporting to be the last will and testament of Robt. H. Haley, and which was admitted to probate in common form in the county court, was not revoked by the testator—the mere direction of the testator to the custodian to destroy the will unaccompanied by any overt act of the testator to have said instructions carried out and unaccompanied by any force, fraud, accident or mistake or imposition on the part of the custodian or any other person preventing the carrying out of said instructions, being insufficient to revoke said last will and testament. In her petition to the county court, the contestant averred as follows:

"Petitioner charges that said instrument is not the will and testament of said Robt. H. Haley, deceased, because as your petitioner is informed, believes and charges, said decedent, Robt. H. Haley, revoked said paper writing by directing the custodian of the paper to destroy it. Petitioner, therefore, charges that the paper writing admitted to probate is not the will and testament of said Robt. H. Haley, deceased."

This was the only ground set forth in the petition for setting aside the will.

The circuit judge overruled the motion to dismiss the petition and to remand the cause and to this action the proponent excepted. Thereupon, the proponent filed a declaration producing the paper writing as the last will and testament, duly attested, and averred that it was the last will and testament of Robt. H. Haley, deceased. The defendant, the contestant, filed a plea averring that said paper writing was not the last will and testament of Robt. H. Haley. The proponent joined issue by filing a replication. At a later term the case was tried. Just before the taking of testimony was begun counsel for the contestant announced orally:

"May it please the court: in addition to the grounds in the petition, filed in the county court, we will rely upon, the ground of lack of testamentary capacity and undue influence also in the defenses that we have against this paper. I just simply make that announcement of the defenses that we will rely upon."

It is insisted that a direction given by the testator to the custodian of the paper to destroy it did not amount to a revocation, that therefore, the petition filed in the county court failed to set forth a cause of action; that the county court was without power or jurisdiction to certify the proceedings to the circuit court; that for want of such power the circuit court acquired no jurisdiction. Section 3903 of Shannon's Ann. Code, provides:

"Where the validity of any last will or testament, written or nuncupative, is contested, the county court shall cause the fact to be certified to the circuit court and send to said court the original will, and shall require contestant to enter into bond, with surety, in the penal sum of five hundred dollars, payable to the executor mentioned in the will, conditioned for the faithful prosecution of the suit, and in case of failure therein, to pay all costs that may accrue thereon."

The jurisdiction of the circuit court to try the issue of devisavit vel non upon the contestation of a will, is original and not appellate. Wisener v. Maupin, 2 Bax. 353; Patton v. Allison, 7 Humph., 328. The county court had before it a petition in which it was averred that the decedent revoked his will by directing the custodian to destroy it. It has long been held in this State that the convenient method of instituting a contest of a will is by a petition to the county court setting forth among other things, facts tending to show that the alleged will is not the will of the decedent. The question whether or not a failure to make out such prima facie case in the petition would defeat the jurisdiction of the circuit court, we need not decide for the reason that in our opinion the averment made in the petition was sufficiently broad to cover a case of revocation. The circuit judge thought so, although he afterward held that the evidence was insufficient to sustain the charge of revocation. Looking wholly to the language of the petition, we can see that it was sufficiently broad to cover a case of clearly intended revocation, giving positive direction to the custodian to destroy the will, and subsequent belief that it had been destroyed.

In Ford v. Ford, 7 Humph., 104, it was held:

"If a testator being of sound mind told the witness to burn the will, and it was not done, although he supposed it to have been burned, it is a revocation."

In Smiley v. Gambill, 2 Head, 164, it was held that the burning by the testatrix of a paper which she thought was her will, although it was not, with the intention of revoking by its destruction, and then the honest belief that she had done it, amounted to a revocation.

· We are, therefore, of the opinion that the circuit court properly acquired jurisdiction of the cause, although the evidence was afterward held to be insufficient to support the averments of the original petition. Having acquired jurisdiction, which was original and not appellate, the court had power, and it was its duty, under the code, section 3909, to cause the issues to be made up to try the validity of the will. A declaration in proper form was filed and this was met by plea of the general issue. Under such a plea the contestant could adduce any evidence which would tend to show

that the paper was not a will of the decedent, as that it had been revoked, that it was procured by fraud or undue influence, or that the decedent did not have sufficient mental capacity to make and publish it. Smithson's Civil Procedure, p. 1450; Pritchard on Wills, sec. 365; Caruthers' History of a Law Suit (5 Ed.), p. 550. Under this rule counsel for the contestant could have introduced testimony as to undue influence and mental incapacity without giving notice that these grounds of contest would be relied upon.

It is insisted that the court erred in charging the jury that the proponents must show that the testator acknowledged to the subscribing witnesses that the paper writing signed by him and attested by them was his will. It is admitted by counsel for the contestants that this was an incorrect statement of the law which under the facts of some cases would constitute reversible error; but that this was harmless error as the jury could not have been controlled, or influenced, in arriving at its verdict, by the language complained of in this assignment. This statement to the jury appears in the second paragraph of the charge in which were set forth some of the requisites of the execution of the will. One of the subscribing witnesses, Mr. Corlett, testified that he witnessed the execution of the instrument but that he could not swear that it was a will, or that he understood that the testator was executing a will at the time; that all he could swear was that he was called in to witness an instrument of writing. It is insisted that this instruction was determinative of the case. It is true that if the jury based their verdict upon this instruction and this testimony, and determined that the will was not revoked, and that there was no undue influence or mental incapacity, this would be reversible error. We could only reverse the judgment in the event that from an examination of the entire record it should affirmatively appear that the error has affected the result of the trial. Shannon's Code, sec. 6351A1. On the other hand, if there is some evidence to support the charge of mental incapacity or undue influence, this error cannot be held to have affected the result in any controlling manner.

In order to justify a reversal it is necessary that the plaintiff in error take as true the strongest legitimate view or construction of the testimony against him and show that it affords no support for the finding of the jury. Under this rule we can only consider such evidence as, when believed by the jury, would entitle the successful party to recover.

Dr. W. J. Covington seventy years of age, a lifelong friend of the testator and his physician, draftsman of the will and a subscribing witness thereto, testified that although he was not an alienist, his opinion was that the testator had senile dementia. When asked whether he was of sound or unsound mind he first said that he

would not pass judgment on it, but then said that in some respects he was of sound mind and in some respects he would hardly think that he was of sound mind; that he was forgetful for one thing, like all men who reach ninety years or more. The testator had talked to him frequently about disposing of his property. The witness wrote for him four wills, the first in 1912. In the first will he gave to his daughter her part absolutely. In the second will he made the same or a similiar provision for her as that contained in the fourth will. In the third will, executed about six months before the last one, he gave her part to her absolutely. He obtained the third will from the witness saying that he would let the law take its course. In the first will, he charged his son with advancements amounting to $1,800 and bequeathed $1,000 to his daughter's husband because he had waited on him and his wife during their illness. There was a period of about ten years between the dates of the first and second wills. In the third will he provided that the property be appraised but Mrs. Ogilvie was to have her interest in fee simple, his desire being that she own the old homestead and purchase her brother's half interest in it. After he obtained the third will from Dr. Covington, he came back in a few days and told him that he wanted his will. When told by Dr. Covington that he had already given it to him, he replied that he had not done anything of the kind. He had carried the will away and for several days he could not get his mind straightened out as the witness says. Dr. Covington says that that convinced him that Mr. Haley was absolutely forgetful of his business. He says that on the day of the writing of the fourth will, the testator's mind was in reasonably fair condition but he would not say whether it was sound or unsound, although he seemed as if he knew what he wanted in writing the will. In May, 1923, the testator came to Dr. Covington and requested Dr. Covington to destroy the will, saying that he was going to let the law take its course. He declined to destroy the will because he did not think it was within his province to do so. A few days thereafter the testator called for the will and had it read over to him. He then said to the witness: "Well I reckon that is about what I want. Take it and put it back in the box and keep it."

Dr. Covington testified that senile dementia is a pathological condition resulting from disease of the brain, producing second childhood or dotage, manifested in loss of memory, inability to concentrate, lack of understanding of ordinary matters. He testified that the mind of Mr. Haley was evidently not as well balanced as it was when he wrote his first will. He said that according to medical authority a person so afflicted is easily influenced and led about like a child.

The other subscribing witness was not asked and did not testify as to the mental capacity of the testator, although he had known him for twenty-five years.

It appears from the testimony of Dr. Covington and many other witnesses that Mrs. Ogilvie was always a faithful, dutiful, helpful daughter, living in her father's home, doing much of the housework and ministering to him; that for some years prior to, the execution of this will the testator was in much trouble of mind over the disposition of his property; that he was constantly expressing a desire that his children agree thereon but could not bring it about. The witness, Blanton, says that upon one occasion during the year 1923 he heard the testator tell 'Squire Covington that he could not remain at his son's house upon an occasion of a visit to him because he was not in any peace there. Mr. J. J. Covington testified that beginning about twelve months before he died, the testator showed the childishness of old age although he could not say that he was not "at himself;" that he was restless and different from what he used to be. There was a change in his conduct and conversation. In his latter days he told another witness that he wanted his children to divide the property in some manner before he died, that he would die better satisfied, that he had made a will but had told Dr. Covington to tear it up, that he did not want it; that he could not get his son to do anything that he wanted him to do.

The reasonableness of a will may be looked to as a circumstance in determining the mental capacity of the testator. Pritchard on Wills, sec. 113; Clark v. Clark, 1 Paige, 171, 19 Am. Dec., 402. Of course, the making of an unjust will is not necessarily an irrational or invalid act. The fact that the testator makes an apparently unjust discrimination between his children is merely a circumstance to be considered with other evidence tending to show undue influence or want of mental capacity. Smith v. Harrison, 2 Heisk., 230; Wisener v. Maupin, 2 Bax., 342.

There is testimony in this record that the testator declared that as his daughter had no children he wanted his real property ultimately to go to his son's children, and this is relied on in support of the reasonableness of the provision and the natural motive for making such a will. But the provision would give to the daughter an estate for life in a one-half interest in the land provided she paid to the son an amount equal to the appraised value of an absolute estate in the other one-half, and then she would be entitled only to a life estate in the whole. The evidence, is ample and undisputed that this daughter, by her faithfulness and devotion, was naturally deserving of her father's affection and bounty. To impose upon her a burden of paying the value of the title in fee simple to a one-half interest, receiving therefor only a life estate, and then

only a life estate in the other one-half would be a strange and unreasonable provision. The jury evidently took this into consideration as a strong circumstance in connection with the testimony already recited. The evidence of undue influence is not direct, but taking all of these facts together, the jury evidently reached the conclusion that but for some influence operating upon him, the testator would not have made such a will, when the will executed six months prior thereto was reasonable and just; and the jury evidently found from all of this evidence that the testator was not of sufficiently sound mind and memory to enable him to know and to understand the business in which he was engaged at the time he executed his will.

We are of the opinion that there is material evidence to support the finding of the jury, although the court erroneously instructed the jury that the proponents must prove that the testator acknowledged to the witnesses that the paper attested was his will at the close of the testimony for the proponents the court announced that they had made out a prima-facie case and that the burden then shifted. This meant that they had proved the formal execution of the will. In view of this announcement by the court in the presence of the jury we assume that the erroneous instruction did not affect the verdict of the jury.

It is insisted that the court erred in submitting to the jury the question of the due execution of the will. Counsel have evidently confused the idea of due execution with that of formal execution. The court had already adjudged that the will had been formally executed and had announced that the burden then shifted to the contestant. The court instructed the jury that if they found from the preponderance of the evidence that the will was duly executed, the proponents had made out their case. In view of the fact that the question of testamentary capacity and undue influence were involved, it was proper for the jury to determine whether or not the will had been duly executed. Under such issue the term, "duly executed," involved testamentary capacity and undue influence, both of which were for determination by the jury.

It is insisted that the court erred in failing to instruct the jury what effect to give to the evidence adduced of the testator's declarations concerning what disposition he wished to make of his property. No special request was made by counsel that the court charge the jury upon the effect of such declarations. Mere omission in the court's charge is not reversible error in a civil case where no request for proper and accurate instructions was made in the court below. Mere meagerness of the charge is not ground for reversal when no such request for additional instructions was made by counsel. Railroad v. Wynn, 88 Tenn., 332; Maxwell v. Hill, 89

Tenn., 594; Railroad v. Acuff, 92 Tenn., 33; Wilcox v. Hines, 100 Tenn., 537.

The court instructed the jury that if they believe from the evidence that at the time the paper in controversy was executed, the testator had sufficient mental capacity to know his property, the way and manner in which he desired to dispose of it, and the persons whom he desired to have it, and had capacity to recollect and apprehend the nature of the claims of his child whom he discriminated against, as well as those of the one whom he favored, then he did have a sound mind and disposing memory. The references to discrimination against one child and favor to the other are complained of as invading the province of the jury. There was no controversy over the meaning of the will. It was not disputed that it purported to discriminate against one child and favor another. This was not an issue before the jury. In this section of the charge, the trial judge was explaining to the jury under what circumstances a will can be sustained notwithstanding the inequality of its provisions. Inasmuch as this declaration did not relate to any facts which were in dispute, it was not an invasion of the province of the jury.

It is further insisted that the court erred in failing to set forth to the jury the contention of the proponents that the will was written out of a desire to keep the land in the name of those who bore the Haley name. This insistence is based upon the rule that if the trial judge undertakes to state in his charge the positions insisted on by the parties he must not so state them as to mislead the jury in material matters to the prejudice of either party. A careful reading of the charge fails to disclose that the trial judge committed such error. His instructions as to mental incapacity and undue influence were given with care and with proper qualifications. He did not undertake to set forth the contentions of the contestant that certain facts were proved showing undue influence but merely that such influence had been exercised; and of course, the jury clearly understood that this was denied. It is insisted that the trial judge should have set forth to the jury the insistence of the proponents that the will had been so written out of a desire on the part of the testator to keep the title in those who bore the Haley name; that he wanted his daughter to live on the land during her lifetime; that she was married, was in poor health, was not expected to live long and could have no hope of leaving children; and that for these reasons the testator wanted his daughter to have only a life estate in that portion of the lands devised to her. Inasmuch as it was not incumbent upon the trial judge to state in detail the positions insisted on by the parties, and he had not stated in detail the positions insisted on by contestant, it was not prejudicial to the proponents for him to omit to instruct

the jury as suggested by the counsel for the proponents. Nor was any request submitted to the court to give such instructions to the jury. Such instruction if given would have been in the face of the fact that prior to the institution of this action, Jas. A. Haley had filed a bill in the chancery court setting up his alleged interest in the land under the will and seeking to have the land sold, the value of his interest in the proceeds ascertained and paid over to him.

Upon the whole we are of the opinion that there is no error in the judgment of the circuit court and it is affirmed. The costs of this appeal will be adjudged against the plaintiffs in error and the sureties on their appeal bond.

The cause will be remanded to the circuit court in order that the verdict and judgment may be certified to the county court, to be entered of record.

Faw, P. J., and Crownover, J., concur.