J. W. OWEN, INC. and ZELLNER KYLE, Plaintiffs-in-Error, v. WILLIE HAROLD BOST and wife, MARY BOST, Defendants-in-Error.—364 S.W. (2d) 499.

Western Section at Jackson. August 31, 1961.

Certiorari Denied by Supreme Court November 28, 1962.

John R. Gilliland, Frank J. Glankler, Jr., Montedonico, Boone, Gilliland, Heiskell & Loch, Memphis, for plaintiffs in error.

Thomas R. Prewitt, Armstrong, McCadden, Allen, Braden & Goodman, Memphis, for defendants in error.

CARNEY, J. The jury below returned a verdict of $25,000 in favor of the plaintiffs, Willie Harold Bost and wife, Mary W. Bost, against the defendants, J. W. Owen, Inc. and Zellner Kyle. Plaintiffs' 3-year-old son, Willie Harold Bost, Jr., was run over and killed by a dump truck driven by the defendant, Zellner Kyle, employee of J. W. Owen, Inc. The Trial Court suggested a remittitur of $7,500 and rendered judgment against both defendants in the amount of $17,500. The defendants have appealed in error claiming no liability. The plaintiffs have appealed from the action of the court in suggesting the remittitur and in refusing to submit the issue of punitive damages to the jury. Plaintiffs ask a reversal and new trial limited to the one issue of punitive damages.

The accident occurred about 4:30 on the afternoon of November 25, 1959, at or near the rear of plaintiffs' back yard in Memphis, Tennessee.

Harrison Creek runs generally in a northerly and southerly direction and forms the west and rear boundary of a number of residences including that of the plaintiffs, Mr. and Mrs. Bost. The City of Memphis awarded a contract to the defendant, J. W. Owen, Inc., to straighten, widen and concrete the bottom and sides of Harrison Creek for a distance of 1500 feet running south from Bayliss Road. Under the terms of the contract the City of Memphis obtained the easements for the work from the several property owners. The con-

tractor was obligated to fill in and smooth up the dirt and to fill in the old ditch against the newly concreted sides of the Creek.

The contractor was obligated to restore and replace all fences, shrubs, etc. removed during the construction.

At the time of the unfortunate accident the concrete had all been laid and there remained only the work of back filling and smoothing up the ground along the edges of the concrete.

A right of way obtained by the City for the benefit of the contractor extended eastward from the eastern edge of the newly concreted side of Harrison Creek only a very short distance and the contractor had a roadway only about 12 feet wide extending along the top of the eastern side of Harrison Creek for the use of its trucks, tractors and other equipment.

In dredging out the Creek preparatory to concreting the bottom and sides the defendant, J. W. Owen, Inc., had stockpiled the dirt or spoil over on the west side of Harrison Creek. In order to fill in behind the concrete and smooth up the east side of Harrison Creek, it was necessary to haul the dirt northward along the west bank of Harrison Creek to Bayliss Road, across the creek and then haul it southward and dump the dirt along the east bank of Harrison Creek. The accident happened on the east side of Harrison Creek at a point in or at the edge of the 12 foot roadway to the west and slightly to the south of the plaintiffs' back yard.

On the day in question the defendant, Zellner Kyle, had obtained a load of dirt on the west side of Harrison Creek and had driven the dump truck northward along the west margin of Harrison Creek to Bayliss Road; had

turned east on Bayliss Road and crossed Harrison Creek and then started backing his truck southward along the east bank of Harrison Creek. About six hundred feet south of Bayliss Road another employee of J. W. Owen, Inc. was using a tractor to spread the dirt and fill in behind the concrete. This tractor and loader-spreader was being operated by defendant's employee, Thomas Bell.

The defendant, Zellner, backed his truck over the little Bost boy without knowing he had run over him. After he emptied his load of dirt down near the tractor loader-spreader and had started forward toward Bayliss Road he came upon the body of Willie Bost, Jr. and then learned that he had killed him. The body had been crushed by the wheels of the heavily loaded truck.

About ten residences including that of the plaintiffs faced generally in an eastern direction. The property lines extended back westward to the center of Harrison Creek. Most of the back yards of these residences were enclosed by fences. In order to use the right of way and perform the contract, it was necessary for the contractor to remove all the fences on the right of way obtained by the city. Shortly after the fence along the rear of the plaintiffs' property was removed, Mr. Bost erected another wire fence running generally north and south across the back of his property but well on his property and not on the right of way. The back of the Bost home was approximately 60 feet from the east margin of the contractor's right of way.

Mr. and Mrs. Bost had five children: A daughter, Patricia Ann, aged 13; a daughter, Nancy, aged 5; a son, Jim, aged 4; and Sally and Willie Harold Bost, Jr.,

twins, being 3 years old on the day of the accident, November 25, 1959.

Mr. Bost is employed as a laboratory technician at Buckeye Cellulose Corporation in Memphis and at the time of the accident his hours were from 3:00 P.M. to 11:00 P.M. Mrs. Bost was employed at Kelloggs Corporation in Memphis and her hours were from 7:00 A.M. to 3:00 P.M. They employed a maid the five days a week which they worked. The maid regularly left about 4:00 P.M. each afternoon.

On the day of the accident Mrs. Bost left home around 4:00 P.M. to go to a nearby shopping center to purchase birthday gifts for the twins and to get their pictures which she had previously ordered. The maid was still at home when Mrs. Bost left but Mrs. Bost anticipated that the maid would leave in a short time and told their daughter, Patricia Ann, aged 13, to look after the twins. The 4-year-old, Jim, was at one neighbor's home and the 5-year-old, Nancy, was at another neighbor's house.

The 3-year-old twins were at home with Patricia Ann. She put Willie Harold's coat on and he went out the front door. She was about to put the coat on his twin sister, Sally, when the telephone rang. She answered it; explained to the caller that her mother was not at home; returned and put the coat on Sally; went to the front yard to look for Willie and he had disappeared. After calling for him she looked in the back where she saw his body in the roadway. Apparently Willie had gone out the front door, turned south and walked westward through the neighbor's yard back to the roadway where he was killed. The neighbor's yard was unfenced. His body was

found about three feet south of the southern boundary line of the Bost property.

At the conclusion of all the proof the Trial Judge refused to charge the jury on Count II of plaintiffs' declaration seeking punitive damages. He overruled defendants' motion for a directed verdict and submitted the case to the jury on Count I of plaintiffs' declaration.

## APPEAL IN ERROR BY ZELLNER KYLE AND J. W. OWEN, INC.

Assignment of error No. I insists that His Honor the Trial Judge was in error in failing to grant defendants' motion for a directed verdict at the conclusion of all the proof.

Count I of plaintiffs' declaration charged the defendants with negligence in the following particulars:

"(1) Defendant Kyle was backing said dump truck without keeping a proper lookout to the rear or the direction in which he was going;

"(2) Said defendant did not have the dump truck he was backing under proper control;

"(3) Defendants failed to have a lookout posted in advance of said backing truck when they knew, or in the exercise of reasonable care should have known, that there were many children in the immediate area and that backing a loaded dump truck without such a lookout created a dangerous hazard for the safety of the children;

"(4) In that said dump truck was not properly equipped with rear view mirrors or other devices

for detecting the presence of children or other persons who might be in the path of the backing truck;

"(5) In that defendant Kyle was backing said truck at an excessive speed and in a reckless and careless manner in view of all the circumstances obtaining at the time of said accident; and

"(6) In that defendants took no precautions whatever before backing said dump truck from Bayliss Road south to the point of said accident to determine whether or not it was safe or prudent to back said truck when they knew, or in the exercise of due care should have known, that said truck was backing over the rear portion of private yards, and when they knew, or should have known, that many children lived in the immediate neighborhood and frequented the area where said accident occurred."

Count II of plaintiffs' declaration averred gross negligence and sought recovery of punitive damages. The defendants in their special pleas denied any acts of negligence. In addition, defendants pleaded that the plaintiffs were guilty of gross negligence in entrusting the custody of the 3-year-old child, Willie Harold Bost, to his 13-year-old sister and in permitting Willie Harold Bost to go unattended on the right of way.

There were no eye witnesses to the accident. Apparently the last person who saw little Willie Bost alive was his sister, Patricia, when he went out the front door of their home after she had put his coat and cap on.

The dump truck driven by Kyle was loaded with three to four yards of dirt and fully loaded weighed about 26,000 pounds. It had heavy duty dual rear wheels carry-

ing tires size 10 by 20. The bed and rear wheels of the truck were eight feet wide. The roadway was only 12 feet wide. The defendant contractor did not seek permission from any of the property owners to turn around. The dump trucks backed down the roadway from Bayliss Road south along the east margin of the concrete where the dirt was spread and the holes filled in by the tractor loader.

The defendant, Zellner Kyle, testified that on the day in question he backed his dump truck across the sidewalk at Bayliss Road, got out, looked southward along the roadway, saw no children, got back in his truck and started backing slowly down the right of way most of the time with his left foot on the left fender and guiding his truck along the east margin of the newly concreted east bank of Harrison Creek; that when he reached a point about 300 feet from Bayliss Road he looked in his right rear view mirror but did not see anything and continued on southward till he dumped his load of dirt; that on his way back northward driving forward he saw the body of the little boy and realized that he had run over him. He immediately notified other employees of the accident. The record shows that the Bost boy's body was found approximately 380 feet south of Bayliss Road in or near the eastern edge of the 12 foot roadway.

Plaintiffs' witness, Joe Tucker, who was a member of the accident division of the Memphis Police Department and who investigated the accident in question, testified that he received the call of the accident at 4:46 P.M. and arrived at the scene of the accident about 5:00 P.M. on November 25, 1959. He testified that the defendant, Kyle, told him that usually when he backed his truck down the right of way there was someone there to clear the way;

he said Kyle called him his bossman, but that on this day it was his last load, his bossman wasn't around or was busy so he went ahead and backed down the roadway without anyone to clear the way. Further, Mr. Tucker testified that the defendant, Kyle, told him that while he knew that children regularly played in the roadway yet he was not on the lookout for them because he had backed down this location several hundred times and that he had always had someone to clear the way for him. Mr. Tucker said this statement was made in the presence of Mr. J. W. Owen, vice-president of J. W. Owen, Inc. Both Mr. Owen and Zellner Kyle denied that Kyle made any such statement.

While the defendant construction company still owned the particular dump truck that was involved in the accident it introduced in evidence pictures of a similar dump truck stating that the other truck had been converted to a flat bed truck; that it differed from the one shown in the photograph only that the rear view mirrors shown on the one in the photograph were rectangular whereas the ones on the truck driven by Kyle were round. The dump body of the truck extended beyond each side of the cab.

From the testimony of defendant Kyle and Mr. Owen the jury could reasonably have found that the defendant, Kyle, after he got in his truck and started backing down the roadway was backing blind so far as the right side and the right rear of the loaded dump truck were concerned and did not see and could not have seen the little boy after he came within 150 to 200 feet of the truck; that Zellner drove with the left door open, his left foot on the left fender of the truck and that he guided the truck backward by keeping a short distance away from

the east edge of the newly laid concrete being careful to avoid falling into the holes or ditches nearest the concrete.

The construction work on Harrison Creek had been going on intermittently for a period of several months. During the entire period of the construction work the presence of children on the right of way and in and about the construction area had been a great problem to everybody concerned, the contractor, the employees and the parents. Mr. Byars, the city construction inspector on the job, went to the principal of the elementary school in the neighborhood and asked his help in keeping children away from the project.

There were many children living in the vicinity and employees of J. W. Owen, Inc. including the defendant, Zellner Kyle, had on numerous occasions stopped their work and got the children out of the way. Mr. Owen testified that he had warned all of the employees to watch out for the children. He testified that his company never furnished a watchman to flag the various pieces of equipment as they were backed down the roadway and that it would not have been practical to do so; that it would have been too expensive to procure turn-around points from the property owners so that the equipment could go forward down the road and that he had never given any thought to erecting a fence all the way down the east margin of the roadway so as to keep the children in the neighborhood out of the roadway.

Defendant's employee, Paul Thomas Allen, general superintendent on the job, testified that on numerous occasions he had escorted very small children off the roadway and that about a week before the fatal accident he himself saved Willie Bost, Jr. from being run over in

the roadway by a truck; that someone started the truck and he ran and got the boy out of the way and that if he had not been there watching, an accident would have happened. The defendant driver, Zellner Kyle, testified that about 12:00 o'clock on the day of the accident he, Kyle, stopped his truck for two small children in the roadway and that Mr. Bell, the operator of the loader-spreader, got them off.

In addition to its obligation under the general tort law of our state, defendant J. W. Owen, Inc., was bound by contract with the City of Memphis as follows:

"The contractor shall provide all necessary barricades, lights and watchmen for the protection of the public, and shall save and hold harmless the City from any claims for damages, that may be brought on account of any neglect on the part of the contractor, his agents or servants.

\* \* \* \* \* \* \* \* \* \* \*

"Precautions shall be exercised at all times for the protection of persons (including employees) and property." (Tes. of Owens, R. p. 270.)

Also the contract required J. W. Owen, Inc. to erect a permanent type chain link fence on each side of Harrison Creek at the conclusion of the work.

While it is true the declaration did not charge the defendant, J. W. Owen, Inc., with negligence in failing to enclose the work area with a temporary fence, we think it was proper for the jury to take such failure into consideration in deciding whether the defendant should have provided a lookout or guide to protect from the backing truck any children that might wander into the construc-

tion area and whether defendant Kyle was backing the truck without proper lookout to the rear.

Other defense witnesses testified that it would not have been practical to furnish such a lookout or flagman. By practical they must have meant it would have been too expensive. We think the answer to this insistence is that the cost of taking adequate measures for the protection of people against injury should have been included by the defendent, J. W. Owen, Inc., in arriving at the amount of its bid to do the work.

It seems to the writer that a reasonably convenient and comparatively inexpensive safety measure on the part of J. W. Owen, Inc. would have been to enclose the construction area by a temporary fence similar to the type used by farmers in this area to restrain cattle and swine. It would have taken less than 200 lineal rods of fencing. The record does not contain any evidence concerning the cost of fencing but it is a matter of general knowledge in this area that such fences can be erected by farmers at a cost of from $2.25 to $2.50 per rod. If we estimate the cost at $3.00 per rod allowing for increased urban labor cost the area could have been enclosed for approximately $600.00. The contractor would have been able to recoup some of this cost from the re-use or sale of the fence as salvage in addition to receiving increased efficiency from its employees who would have been freed from having to watch for and shoo the small children from the construction area ever so often. Mr. Owen, the vice-president, testified that he never even thought about enclosing the area.

■ We think there was material evidence upon which the jury could have found defendants guilty of the fol-

lowing acts of negligence: (1) Backing the truck down the roadway which was accessible to the small children without keeping a proper lookout to the rear; (2) failing to supply a watchman or lookout to prevent the truck backing over any of the small children who frequented the area.

The backing of an automobile on a public or private street is not negligence per se but reasonable care requires the driver of a motor vehicle to look before starting to back the vehicle to make sure that the way is clear and the driver must continue to look so long as he is backing the vehicle. Taulborg v. Anderson, 119 Neb. 273, 228 N.W. 528, 67 A.L.R. 642; 5 Am.Jur. 680.

In our opinion the case of Olson v. Sharp, 36 Tenn. App. 557, 259 S.W.(2d) 867, cited by defendants, Kyle and J. W. Owen, Inc., supports our holding. In that case the plaintiff, an engineer, was severely injured by a paving truck which was being backed up on a construction job. This court speaking through Presiding Judge Mc-Amis held that it was for the jury to determine whether the failure to maintain any safeguards against the obvious danger attendant upon backing trucks violated a duty owing persons required to be in the area. In the present case the children were not required to be in the area but these defendants were charged with express notice that children of tender years in the community frequently were in the paths of the backing trucks and equipment and it was the duty of the defendants to take reasonable precautions to keep from injuring or killing any of such children.

It is the insistence of the defendants that since there is no evidence as to the position of the truck when the

child came on the roadway, that the verdict of the jury is the subject of speculation and conjecture. They insist that it is just as reasonable to infer from the evidence that the child came out into the roadway in front of the backing truck from behind the telephone pole and two garbage cans too suddenly for the defendant, Kyle, to have stopped if he had been looking as it is to infer that the child came into view and finally into the roadway for a sufficient time in which the defendant, Kyle, could have stopped his truck if he had been keeping a proper lookout ahead. Plaintiffs cite and rely upon the cases of Nashville C. & St. L. R. R. v. Sutton, 21 Tenn. App. 31, 104 S.W.(2d) 834; Quaker Oats Co. v. Davis, 33 Tenn. App. 373, 232 S.W.(2d) 282; Nichols v. Smith, 21 Tenn. App. 478, 111 S.W.(2d) 911; Delaney v. Turner, 34 Tenn. App. 380, 237 .W.(2d) 965.

This insistence is not well taken for two reasons: (1) The jury might reasonably have found that the defendant, Kyle, would probably have seen Willie Bost when he approached the roadway and before he got behind the telephone post or garbage cans if Kyle had been looking; (2) That a flagman would have probably seen and protected young Bost from injury even if he had gotten behind the telephone post or garbage cans.

Further, the defendants contend that the undisputed proof in the record shows the plaintiffs and their daughter, Patricia Bost, were guilty of proximate contributory negligence as a matter of law. They cite and rely upon Bamberger v. Citizen Street Railway, 95 Tenn. 18, 31 S.W. 163, 28 L.R.A. 486, and Nichols et al. v. Nashville Housing Authority, 187 Tenn. 683, 216 S.W.(2d) 694.

In the Bamberger case there was a jury verdict for the defendant. In the Nichols case a little 3-year-old girl was

scalded to death when she turned on the hot water faucet and fell in the bath tub after being left alone in the bathroom for a few moments by her mother. The court held that Mrs. Nichols, the mother, was chargeable with knowledge that the little 3-year-old girl was likely to tamper with the hot water faucet.

In the present case the parents, Mr. and Mrs. Bost, had instructed their older children to stay away from the roadway and to keep the twins away from the roadway. They arranged their work hours so that one of them would be at home with the children nearly all the time and in addition they kept a maid five days a week to help look after the children. On the day in question, Mrs. Bost left home for only a few minutes to go get a picture of the twins which she had ordered and a birthday present for them. She left her 13-year-old daughter, Patricia Ann, in charge of the two younger children, the other two children being at the homes of neighbors.

In the case of Reid v. City Coach Co., 215 N.C. 469, 2 S.E.(2d) 578, 123 A.L.R. 140, it was held that the parents of a 4½ year old child were not guilty of contributory negligence as a matter of law in permitting their 10-year-old daughter to take the little child to a Sunday School entertainment being held about two blocks from their home.

■ In the present case we think it was a question for the jury to determine whether the plaintiffs under all the circumstances of this case were guilty of proximate contributory negligence in turning the custody of their 3-year-old twins over to their daughter, Patricia Ann. Also it was for the jury to determine whether Patricia Ann, as custodian of the twins, was guilty of proximate con-

tributory negligence in letting the little boy get out the front door and on back through the neighbor's property to the roadway while she answered the phone.

Hence, assignment of error No. I is respectfully overruled. Williams v. Town of Morristown, 32 Tenn.App. 274, 222 S.W.(2d) 607; Murphy Truck Lines v. Brown, 203 Tenn. 414, 313 S.W.(2d) 410; Bradshaw v. Holt, 200 Tenn. 249, 292 S.W.(2d) 30.

By assignment of error No. II the defendants challenge a portion of His Honor's charge. The portion complained of told the jury that it was the plaintiffs' theory and contention under the declaration and the proof that the defendants were guilty of negligence in the six different respects which have been quoted hereinabove. The court then charged the jury that if they found from a preponderance of the evidence that the minor child was killed as a direct and proximate result of one or more of the negligent acts of the defendants then they should find for the plaintiffs.

It is the insistence of the defendants that there was no evidence to justify the jury in finding that the defendant Kyle did not have the truck under proper control or that said truck was not properly equipped with rear view mirrors or that defendant Kyle was backing said truck at an excessive speed and in a reckless manner. They cite Mayor and Aldermen of Morristown v. Inman, 47 Tenn.App. 685, 342 S.W.(2d) 71.

"It is an established rule in this state that it is the duty of counsel by suggestion or special request to bring to the attention of the trial judge any amplification of his charge, or if the language be equivocal to ask for removal of the doubt by proper instruc-

tions. Pollard v. Beene, 20 Tenn.App. 83, 95 S.W.(2d) 942; Hayes v. Cheatham, 74 Tenn. 1; National Life & Acc. Ins. Co. v. Morrison, 179 Tenn. 29, 162 S.W.(2d) 501; Haley v. Ogilvie, 2 Tenn.App. 607; Carney v. Cook, 158 Tenn. 333, 13 S.W.(2d) 322, 325.

"In considering this question our Supreme Court in Carney v. Cook, supra, said:

" '* * *, counsel engaged in a trial should aid the court by calling his attention to an abstraction or an inadvertence in delivering his instructions to the jury, and, where they fail to do so, this court will not reverse unless convinced that the party complaining was prejudiced by such instruction, or that justice is about to miscarry.' " Management Services v. Hellman, 40 Tenn.App. 127, 289 S.W.(2d) 711.

■ In the present case defendants' counsel made no special request to the Trial Judge to remove from the consideration by the jury these specific allegations of negligence which defendants claim were unsupported by the evidence. It does not affirmatively appear that the verdict of the jury nor the outcome of the trial was affected by the portions of the charge complained of. T.C.A. Section 27-117. Assignment of error No. II is therefore respectfully overruled.

■ Assignment of error No. III is as follows:

"The Court erred in charging the jury as follows:

" 'Now, as I have stated to you gentlemen, the defendant has interposed and relies upon the plea of contributory negligence. In reference to the burden of proof upon the question of contributory negligence, I charge you that the law is that the burden is upon

the defendants to show that the plaintiffs were guilty of contributory negligence.' "

Defendants cite and rely upon the language of Bamberger v. Citizens' Street Railway, 95 Tenn. 18, 31 S.W. 163, 28 L.R.A. 486. The language of the Bamberger case seems to support the insistence made by the defendants. However, there was a jury verdict for the defendant and the Supreme Court finally affirmed the case upon its finding that there was no negligence on the part of the defendant streetcar company. However, the court, in its opinion, does discuss the question of the burden of proof relating to contributory negligence on the part of the plaintiff, father of the minor child.

Our more recent cases seem to hold that unless the plaintiff's contributory negligence is shown by his own proof the burden to show the plaintiff guilty of contributory negligence rests upon the defendant. Tenn. Central R. Co. v. Herb, 134 Tenn. 397, 183 S.W. 1011; Memphis Street Ry. Co. v. Aycock, 11 Tenn.App. 260.

In the absence of any special request from the defendants, the charge given by His Honor was substantially correct and assignment of error No. III is respectfully overruled.

■ ■ Assignment of error No. IV complains of the failure of His Honor to give in charge defendants' special request No. I. We cannot consider this special request because it was not made a part of the bill of exceptions. The fact that it was contained in the motion for a new trial is not sufficient, a motion for a new trial being merely a pleading and not evidence. Taylor et al. v. Robertson, Admr., 12 Tenn.App. 320. Therefore, assignment of error No. IV is respectfully overruled.

Defendants' assignment of error No. V complains of the following portion of His Honor's charge:

"Now, as to damages, gentlemen, the plaintiffs in the case such as we are trying—that is, a wrongful death case—are entitled to recover the damages resulting to the parties for whose use and benefit the suit is brought—that is, the pecuniary value, the money value of the life of the deceased—is to be determined upon a consideration of his age, his expectancy of life, the condition of his health, capacity for labor and earning money in any occupation or vocation, and his personal habits as to sobriety and industry, all modified, gentlemen, however, by the fact that the expectancy of life is at most problematical, based on experience; and also by the fact that the rate of earnings of the same individual is not always uniform, and the jury may consider, as an element of damages, what has been paid as funeral expenses for the burial of the deceased."

Here again we observe that there was no special request offered by counsel for defendants relative to the matters contained in this portion of His Honor's charge. Management Services v. Hellman, (1955), 40 Tenn.App. 127, 289 S.W.(2d) 711. The language complained of has been approved in the case of Davidson Benedict Co. v. Severson, 109 Tenn. 572, 72 S.W. 967.

Therefore assignment of error No. V is respectfully overruled.

■ Assignment of error No. VI insists that the verdict of the jury even as reduced by the remittitur of $7,500 is excessive.

. We think that the judgment of $17,500 is not excessive and the assignment of error is therefore respectfully overruled.

## ASSIGNMENTS OF ERROR BY PLAINTIFFS, MR. . AND MRS. BOST

Assignments of error I, II and III insist that His Honor the Trial Judge was in error in refusing to allow the jury to consider Count II of plaintiffs' declaration which sought punitive damages. Plaintiffs contend that the defendants were guilty of such gross negligence as to manifest a reckless disregard or conscious indifference to the consequences of their acts and that the jury has the discretion to allow punitive damages where the evidence tends to show gross negligence. They cite American Lead Pencil Co. v. Davis, 108 Tenn. 251, 66 S.W. 1129; Phillips v. Newport, 28 Tenn.App. 187, 187 S.W.(2d) 965; Grizzard and Cuzzort v. O'Neill, 15 Tenn.App. 395; Palatine Insurance Co. v. Hardison Seed Co., 42 Tenn.App. 388, 303 S.W.(2d) 742; and McDonald v. Stone, 45 Tenn. App. 172, 321 S.W.(2d) 845.

■ From our review of the record we are of opinion that His Honor the Trial Judge correctly refused to submit the question of punitive damages to the jury. The uncontradicted evidence is that several of the defendant's employees from time to time moved the children out of the roadway. Just a week before the accident little Willie Bost was taken out of the path of a truck by defendant's employee, Mr. Allen. On the day of the accident defendant Kyle stopped while Mr. Bell removed two children from the roadway. It is our opinion that there is no evidence of such gross negligence as to manifest reckless disregard for the safety of the children in the

area including the safety of the deceased, Willie Bost, Jr. Therefore, assignments of error I, II and III are respectfully overruled.

Assignment of error No. IV complains that His Honor the Trial Judge erroneously suggested a remittitur of $7,500 and reduced the amount of the verdict from $25,000 to $17,500. In the recent case of Murphy Truck Lines v. Brown, 203 Tenn. 414, 313 S.W.(2d) 440, the jury returned a verdict of $25,000 for the wrongful death of a 6-year-old girl who was in good health. She was run over by a truck at an intersection and died within a few hours. The jury returned a verdict of $25,000. The Trial Judge reduced this amount to $12,500 and this section of the Court of Appeals restored $7,500 of the remittitur and rendered judgment for $20,000. Our Supreme Court affirmed the $20,000 judgment. In the present case the deceased was only 3 years old but also in good health. His Honor the Trial Judge reduced the verdict from $25,000 to $17,500. After studying the entire record we do not feel that the amount of the remittitur should be disturbed. Assignment of error No. IV is therefore respectfully overruled.

It follows therefore that judgment will be entered in this court in favor of the plaintiffs in the amount of $17,-500 together with interest from December 23, 1960, the date of overruling the motion for new trial. The defendants below will be taxed with the costs in this court as well as in the court below.

Avery, (P. J. W. S.), and Cooper, J., concur.