138

COUNTRY MAID DAIRY, INC., and L. C. Whitefield, Plaintiffs-in-Error, v. BRENDA MAXINE HUNTER, Admx. of the Estate of Monica Marchelle Wilson, Defendant-in-Error.—416 S.W.(2d) 367.

Middle Section. March 31, 1967.

Certiorari Denied by Supreme Court June 5, 1967.

Richard D. Taylor, of Glasgow & Adams, Nashville, for plaintiffs in error.

J. Vaulx Crockett, of Stockell, Rutherford & Crockett, Nashville, for defendant in error.

PURYEAR, J. For convenience, we will refer to the parties as plaintiff and defendants as they appeared in the trial Court, wherein the defendant-in-error was plaintiff and the plaintiffs-in-error were defendants.

This suit was originally tried on February 4th and 7th, 1966, in the Third Circuit Court of Davidson County, before the Honorable Henry F. Todd, Judge, resulting in a jury verdict for the defendants. This verdict was set aside by the trial Judge because of jury misconduct and the case was reinstated on the docket March 11, 1966.

On May 2, 1966, plaintiff filed an amended declaration in which she sued for damages for the death of her three-year-old child in one count, alleging common law negligence on the part of defendants, to which the defendants filed a general issue plea of not guilty.

The second trial of the case, which is the subject of this appeal, was held on May 26th and 27th, 1966, before the Honorable John L. Uhlian, Judge of the Second Circuit Court of Davidson County.

At the conclusion of the plaintiff's proof, defendants moved the Court to peremptorily instruct the jury to return a verdict for defendants, which motion was overruled by the Court.

At the conclusion of all the proof, defendants renewed their motions for such directed verdict, which was again overruled by the Court.

The Court then properly instructed the jury, after which the jury retired and after consideration of the case, returned a verdict in favor of plaintiff and against defendants in the sum of $21,000.00.

Defendants filed a motion for new trial on June 14, 1966, which was later overruled by the trial Court, and the defendants have, within the proper time, prayed and perfected an appeal in error to this Court and filed two assignments of error, both of which make the charge that

it was error for the trial Court to overrule defendants' motion for directed verdict since there was no evidence that defendants were guilty of any negligence which proximately caused the death of plaintiff's child.

Counsel for defendants, in his well reasoned brief and argument, makes a clear statement of the facts which we find to be well supported by the record, which statement is as follows:

"On October 7, 1964 at approximately 10:30 A.M. the defendant L. C. Whitefield, driving a truck for Country Maid Dairy, Inc., pulled into a driveway located on Larkin Springs Road in Davidson County, Tennessee. At the end of the driveway there was a large turnaround area where Whitefield stopped his truck. There were several houses near the turnaround and all the families living there were related. He testified that at the time he entered and stopped his truck, no children were in sight. Mr. Whitefield made two (2) deliveries to houses in close proximity to the turnaround area and upon returning to his truck noticed two small children seated upon a porch approximately ninety (90) feet distant from his truck. Mr. Whitefield, thinking there might be other children in the area, went around to the rear of his truck to make certain there were no children there. Getting into his truck from the left side, he noticed the two children still sitting on the porch as before and he proceeded to back in a direction which was, as he stated, forty-five (45) degrees and not directly toward the porch when, suddenly, in his rearview mirror, he noticed that there was only one (1) child upon the porch. He immediately stopped his vehicle and testified that the vehicle was never closer to the porch than at least forty (40) feet. Upon alighting from his vehicle he discovered the deceased

child to the outside of the left rear wheel where, he testified, the child had apparently been struck but not run over by the wheels. Mr. Whitefield felt no impact. Being unable to find any adult in any of the houses, Mr. Whitefield took the child to the hospital and the child died shortly thereafter.''

It should be further stated, however, that the testimony of Dr. Hillis P. Evans, a physician who examined the child upon arrival at Madison Hospital, indicated that at least one wheel of the truck had run over the child.

. One of the cases cited by defendants' counsel, upon which he strongly relies, is Williams v. Jordan, 208 Tenn. 456, 346 S.W.2d 583, wherein the defendant, Patillo, parked the automobile which he was driving on a gravel strip at the end of a stone walk leading from the porch of the plaintiff's residence. Although the car was parked in plaintiff's yard, this was a customary parking place for the plaintiff's family and others in the neighborhood. The defendant noticed young children playing in a playground adjacent to the plaintiff's yard and about ninety feet northwest of his car, and did not notice the deceased, a thirteen month old boy, and his mother sitting on the porch about twenty feet west of the car. He got out of the car and crossed the street to the northeast to see a friend and while defendant was in his friend's house, the child's mother left the porch to get some toys in her house.

After defendant left his friend's house about five minutes after entering same, he crossed the street again and got in the car and drove away. As he was leaving the parking place he felt a bump under the right rear wheel but assumed it was a loose stone from the walk. The

mother from inside of the house heard a child cry out then the mother looked out the window and saw an unidentified child pointing at the departing vehicle and thereupon ran outside and discovered that her son had been run over.

There was no evidence in the case to show where the child was located when he was run over or to show that he could have been seen by defendant as he approached the automobile from the left side and got into it.

The defendant testified that he did not see the child, that he could not have seen him, had no reason to suspect that the child was anywhere near the car and did not go around to the right side or look under the automobile before resuming his seat at the wheel.

All the circumstances in the Williams v. Jordan case indicate that at the time defendant got into his car and took off the child was either under it or concealed from defendant's view, thus giving him no cause or reason whatever to suspect the child's presence under or near the automobile.

The majority opinion in Williams v. Jordan was written by the late Justice Swepston and in holding that the trial Court should have directed a verdict for defendant, Justice Swepston made the following statement in the opinion:

"There is accordingly, in our opinion, no basis on which this case should have been submitted to the jury, unless under the circumstances of this case the operator of this motor vehicle in the exercise of ordinary care should have looked under and all around the automobile before getting in and taking off. It seems that merely to state the question is to give the answer that

ordinary care would make no such requirement. No case has been cited to that effect and the rule otherwise is practically universal.'' Williams v. Jordan, supra, pp. 460-461, 346 S.W.2d p. 585.

In that case, Justice Burnett and Justice Felts dissented and a strong dissenting opinion was written by Justice Felts in which they gave their reasons for believing that the judgment of the trial Court awarding a recovery for the death of the child should be affirmed.

The factual situation in Williams v. Jordan is different from the factual situation in the instant case in the following respects:

In Williams v. Jordan, the driver of the vehicle involved did not know and had no reason to suspect the presence of the child at any place near his vehicle and all of the facts in that case show the child was completely concealed from the driver's view at all times except when he first saw him upon the porch of his home in the care of his mother.

Whereas, in the instant case the defendant, Whitefield, was aware of the presence of the child in the area near his vehicle, knew that this child was not in the immediate care of any adult person and the undisputed facts show that after Whitefield got into his vehicle and began to back it, this child left the porch where she was sitting and traveled into the area where the defendant was backing his vehicle.

Counsel for defense also strongly relies upon an unreported opinion of this Court in the case of Deborah Ann Foust v. Alfred Turner, (opinion filed at Nashville on June 29, 1962). The opinion in that case was written

by Judge Shriver and a statement of the case contained therein is as follows:

"The uncontroverted evidence in this case establishes the fact that defendant on a night when it was drizzling rain parked his automobile partly off the left hand side of the road in front of the home in which the two year old plaintiff resided. The house was located some thirty feet from the road and the front yard fence had only one gate for entrance and exit. Defendant parked his automobile some four or five feet beyond the gate. The purpose of his visit was to give his father-in-law, Melvin Foust, who testified in the cause, and who was also the grandfather of the plaintiff, a message to deliver to another member of the family. Plaintiff's father first came out and spoke to the defendant and was told to send his father-in-law out to where the defendant was parked. Plaintiff's father returned and, thereupon, Melvin Foust, the grandfather, came out of the house accompanied by the two small brothers of plaintiff, and came through the front gate and stood within a few feet of the left front door of defendant's automobile while he engaged in conversation for 6 or 8 minutes. The two small boys were on either side of their grandfather holding on to his clothes while he talked.

Plaintiff did not come out of the house with her grandfather and brothers, and both the grandfather and the defendant were wholly unaware of her presence on the scene at or near the defendant's automobile.

It may be observed that the grandfather was in a better place to discover the presence of the little girl as she came on the scene than was the defendant but he did not know she was there.

After the conversation between defendant and his father-in-law was completed, defendant started to drive away but one of his front wheels seemed to drag or be obstructed and he made some comment to the effect that it must have been damaged in some way. The grandfather then suggested that he back up and start again, which he did. He then drove away from the scene entirely unaware that the child had been struck and injured.

The grandfather and the two children with him left the scene in ignorance of the fact that the little girl had come out of the house and had been struck by an automobile. On the grandfather's return to the house, however, he met the parents of the child coming out searching for her, whereupon, he went to where the car had been parked and found the child in the road in an injured condition.

*   *   *   *   *   *

One other significant circumstance not appearing in the above recitation of facts is that, while defendant and his wife were parked and the conversation with Melvin Foust was going on, a man by the name of Curley drove up in his car headed in the same direction that defendant was. Mr. Curley stopped his car beside defendant only a few feet away and engaged in conversation for a short while. Then, just a minute or two before defendant drove away, Mr. Curley also drove away. Thus, there is the possibility that this car struck plaintiff.''

Thus, it will be seen, there is considerable difference between the factual situation in the Foust case and in the instant case.

In our opinion, the Tennessee case in which the factual situation is more similar to the instant case than any other of which we are aware is J. W. Owen, Inc., et al. v. Bost, et ux., 51 Tenn.App. 79, 364 S.W.2d 499. The opinion in the Owen case was written by Judge Carney of this Court and the uncontroverted factual situation is stated therein as follows:

"The defendant, Zellner Kyle, testified that on the day in question he backed his dump truck across the sidewalk at Bayliss Road, got out, looked southwardly along the roadway, saw no children, got back in his truck and started backing slowly down the right of way most of the time with his left foot on the left fender and guiding his truck along the east margin of the newly concreted east bank of Harrison Creek; that when he reached a point about 300 feet from Bayliss Road he looked in his right rear view mirror but did not see anything and continued on southward till he dumped his load of dirt; and on his way back northward driving forward he saw the body of the little boy and realized that he had run over him. He immediately notified other employees of the accident. The record shows that the Bost boy's body was found approximately 380 feet south of Bayliss Road in or near the eastern edge of the 12 foot roadway." Owen v. Bost, supra, p. 87, 364 S.W.2d p. 503.

In holding that the facts presented a jury question and affirming the jury's verdict for plaintiff, as reduced by remittitur, Judge Carney made the following observations and comments in his opinion:

"From the testimony of defendant Kyle and Mr. Owen the jury could reasonably have found that the defend-

148

.ant, Kyle, after he got in his truck and started backing down the roadway was backing blind so far as the right side and the right rear of the loaded dump truck was concerned and did not see and could not have seen the little boy after he came within 150 to 200 feet of the truck; that Zellner drove with the left door open, his left foot on the left fender of the truck and that he guided the truck backward by keeping a short distance from the east edge of the newly laid concrete being careful to avoid falling into the holes or ditches nearest the concrete." Owen v. Bost, supra, pp. 88-89, 364 S.W. 2d p. 503.

\* \* \* \* \* \*

"The backing of an automobile on a public or private street is not negligence per se but reasonable care requires the driver of a motor vehicle to look before starting to back the vehicle to make sure that the way is clear and the driver must continue to look so long as he is backing the vehicle." Owen v. Bost, supra, p. 92, 364 S.W.2d p. 505.

In the instant case we think the undisputed facts show that the child traveled from the place where she was sitting and into the area where defendant, Whitefield, was backing his vehicle. Since this movement was not seen by Whitefield, the jury could logically reach either of two conclusions: (1) That the defendant did not keep a constant lookout in the area where he was backing his vehicle, or (2) he did not see that which an ordinarily careful and prudent person would have seen under the same or similar circumstances.

Either of these two conclusions is sufficient basis upon which to predicate a finding of negligence proximately causing or contributing to the accident.

This is not basing an inference upon an inference, but it is an inference based upon established fact or facts.

▮ In Parish and Parish Mining Co. v. Serodino,. 52 Tenn.App. 196, 372 S.W.2d 433, this Court, speaking through Judge Avery, said:

"'* * * a fact can be proven by direct testimony, by circumstantial evidence or by a combination of both, and when such evidence is of such strength that from it a fact can be found, then from that fact an inference may be drawn with respect to the negligence of an actor.'' Parish and Parish Mining Co. v. Serodino, supra, pp. 235-236, 372 S.W.2d p. 450.

▮ There is no more reason why the driver of a vehicle should not keep a vigilant and constant lookout in the area into which he is moving a vehicle backward than it is where he is moving it forward. Owen v. Bost, supra; Fry v. Elkins, 22 Tenn.App. 317, 122 S.W.(2d) 827; 60 C.J.S. Motor Vehicles sec. 302, page 712.

▮ As has been held in numerous cases in this State, the rule for determining a motion for a directed verdict requires the trial Judge and reviewing Court on appeal to look to all of the evidence, to take the strongest legitimate view of it in favor of the opponent of the motion, and to allow all reasonable inferences from it in his favor; to discard all countervailing evidence, and if then, there is any dispute as to any material determinative evidence, or any doubt as to the conclusions to be drawn from the whole evidence, the motion must be denied and the case submitted to the jury. General Motors Corp. v. Dodson, 47 Tenn.App. 438, 338 S.W.(2d) 655; Poole v. First Nat. Bank of Smyrna, 29 Tenn.App. 327, 196 S.W. 2d 563; Phillips v. Newport, 28 Tenn.App. 187, 187 S.W.

2d 965, and many other cases which could be cited to the same effect.

After applying this rule, we have concluded that the trial Judge correctly overruled defendants' motion for a directed verdict and submitted the case to the jury.

We have considered all of the cases cited by learned counsel for defendants and do not think any of them are controlling in this case.

For the foregoing reasons, the judgment of the trial Court is affirmed with costs.

Shriver and Humphreys, JJ., concur.