**John C. SLOAN, Plaintiff-Appellant,**

v.

**STATE of Tennessee (TENNESSEE BUREAU OF INVESTIGATION, an Agency of the State of Tennessee), Defendant-Appellee.**

Court of Appeals of Tennessee, Middle Section, at Nashville.

Feb. 16, 1984.

Application for Permission to Appeal Denied by Supreme Court May 21, 1984.

James A. Hopper, Savannah, for plaintiff-appellant.

William M. Leech, Jr., Atty. Gen. & Reporter, Claudius C. Smith, Asst. Atty. Gen., Nashville, for defendant-appellee.

OPINION

LEWIS, Judge.

This is an appeal by plaintiff from the Trial Court directing a verdict, pursuant to Tenn.R.Civ.P. 50.01, for defendant at the conclusion of plaintiff's proof.

[T]he rule for determining a motion for a directed verdict requires the trial Judge and reviewing Court on appeal to look to all the evidence, to take the strongest legitimate view of it in favor of the opponent of the motion, and to allow all reasonable inferences from it in his favor; to discard all countervailing evidence, and if then, there is any dispute as to any material determinative evidence, or any doubt as to the conclusion to be drawn from the whole evidence, the motion must be denied and the case submitted to the jury. [Citations omitted.]

*Country Maid Dairy, Inc. v. Hunter,* 57 Tenn.App. 138, 149, 416 S.W.2d 367, 372 (1967). With this rule in mind, we have reviewed the record and find that the Trial Court properly directed a verdict for defendant.

This suit was brought pursuant to T.C.A. § 8–50–601, *et seq.* T.C.A. § 8–50–602 provides, in part, that "[n]o public employee shall be prohibited from communicating with an elected public official for any job-related purpose whatsoever." T.C.A. § 8–50–603 provides:

> It shall be unlawful for any public employer to discipline, threaten to discipline or otherwise discriminate against an employee because such employee exercised his right to communicate with an elected public official. If the court of competent jurisdiction determines that a public employer has disciplined, threatened to discipline or otherwise discriminated against an employee because such employee exercised the rights provided by this part, such employee shall be entitled to treble damages plus reasonable attorney fees.

Plaintiff insists he was disciplined because he communicated with public officials concerning his employment when he was transferred from his job as a Tennessee Bureau of Investigation agent in Savannah, Tennessee, to Johnson City, Tennessee.

There is *no* support in the evidence for this assertion.

Plaintiff served with the Tennessee Highway Patrol from 1951 to 1967, when he "received an additional promotion to the rank of criminal investigator with the Tennessee Bureau of Criminal Investigation." He has served with the Tennessee Bureau of Investigation since that time, except for the period September, 1973, to December, 1975. He had had no complaints about his job qualifications "up until March, 1980." He had had no problems during the time Mr. Ozro Carson served as head of the Tennessee Bureau of Investigation until "on or about April 8th, I [plaintiff] heard I was going to be transferred to East Ten-

nessee." Plaintiff heard "it was already fixed. That another agent … was going to move to Selmer and take over my territory which consisted of Hardin and McNairy Counties."

The plaintiff further testified:

Q. Did you ever have a meeting or a conversation with Mr. Carson after the 8th of April about this?

A. On or about Thursday, April 17th, 1980, I was ordered by my immediate superior, who was then Inspector Jack Blackwell of Summerfield, Tennessee, to meet with he and Mr. Carson in Jackson, Tennessee and inquired, wanted to know what it was about, was it a special assignment I was going to be put on. He says, No, I don't know, I'm not at liberty. And I said, Could it be a transfer. And Mr. Blackwell said, Yes, could be.

Q. All right. Did you in fact meet with Mr. Carson in Jackson?

A. Yes, sir.

Q. And when was that and what was the gist of the conversation?

A. I have to make sure about the date.

Q. Agent Sloan, you're used to testifying in criminal cases, are you not?

A. Yes, that's the reason I have to refer to notes. It was on April the 17th that I met in Jackson with Mr. Carson and Inspector Blackwell.

Q. What was the gist of the conversation, please, sir?

A. All right.

Q. I'd prefer, Mr. Sloan, if you'd just tell us. We don't have to be that—It's not a criminal case.

A. Well, he said they didn't want to embarrass me in any way, but said he felt like he was going to have to move me to East Tennessee, either in the Knoxville or Kingsport area. And we went on there and he wasn't satisfied with my work and I says, Quantity or quality? He says, well both. And the conversation went on and mention was made of retirement.

Q. Who mentioned that?

A. Mr. Carson. And Mr. Blackwell. I don't know exactly which one first, but Mr. Carson. They wanted to know how old I was. Mr. Carson said he thought everyone should retire at 50 years of age. And mention was made of the fact that I had around 30 years and Mr. Blackwell said, You'll be the first one to ever retire from the TBI with 30 years of service.

The conversation went on and Mr. Carson said. This is not politics. And I said, I disagree with that. And he became a little bit angry and I told him I had a right as a human being to disagree and he simmered down and the conversation, strange as it was for me, was fairly orderly from there on for a few minutes.

And I left and went back home and told my wife what had happened and went to see some politicians and some of them wrote letters, some of them made phone calls and I went to see Mr. Floyd Crain, who is the West Tennessee Democrat caucus leader of the House, and he's a Representative in the legislature. He contacted the others and people wrote letters for me. And my wife went to see people. She went to see Granville Hinton who lives there in Savannah, he's on the governor's staff of some kind. And she went to see the local representative there in Hardin County, Mr. Herman Wolf. And my mother wrote a five or six-page letter that I didn't know she had written it until she sent it in and I suppose a mother would do for any son. I was an only son. I have two sisters. And my mother since passed away. She passed away in 1981. I did make it home that night before she— before she passed away.

Plaintiff's own testimony shows that *after* he was told by Mr. Carson that Mr. Carson "felt like he was going to have to move me to East Tennessee, either in the Knoxville or Kingsport area," he proceeded to contact public officials in an effort to stop the transfer.

Nothing contained in T.C.A. § 8–50–601 *et seq.* prohibits "political" transfers.

T.C.A. § 8–50–601 *et seq.* prohibits a public employer disciplining, threatening to discipline or to otherwise discriminate against an employee for exercising his right to communicate "with elected officials for any job-related purpose ..."

The strongest legitimate view of the proof is that plaintiff's transfer to East Tennessee was contemplated by Mr. Carson *before* plaintiff communicated with anyone concerning his job. There is no evidence in the record that plaintiff was transferred to Johnson City from Savannah because he communicated with a public official. T.C.A. § 8–50–601 *et seq.* is not applicable in the instant case.

If plaintiff's transfer from Savannah to Johnson City was politically motivated, then the proper forum to address a political transfer is in the Civil Service Commission. T.C.A. § 8–30–327.

The judgment of the Trial Court is affirmed with costs to plaintiff and the cause remanded to the Trial Court for the collection of costs and any further necessary proceedings.

TODD, P.J. (M.S.), and CANTRELL, J., concur.