MRS. MARY B. BRADSHAW and SAM BRADSHAW

*v.*

THOMAS E. HOLT, Administrator of Estate of

JAMES BOND, JR., Deceased

(*Jackson,* April Term, 1956)

Opinion filed April 27, 1956.

Rehearing Denied June 8, 1956.

HARRELL & NOWELL, and ROBERT P. ADAMS, Trenton, for petitioners Bradshaw.

JOHN W. NORRIS, Brownsville, for respondent Thomas E. Holt.

MR. JUSTICE TOMLINSON delivered the opinion of the Court.

This action was instituted by Holt, Administrator of the Estate of James Bond, Jr., an infant, to recover damages from Mrs. Bradshaw and husband for this infant's death. That instant death was the result of being run over on a public highway by an automobile belonging to Mrs. Bradshaw, and in which she was riding. Her husband was driving. The motion of the Bradshaws made at the close of all the evidence for a directed verdict was overruled. The jury awarded damages of $5,000. The Court of Appeals, in a two to one decision, held that the motion for a directed verdict should have been sustained. The administrator's petition for *certiorari* was granted, and the issues argued here in usual course.

The majority opinion, after detailing all the evidence, and as amplified in response to petition to rehear, finds, as we construe it, that the minds of reasonable men can reach no other conclusion than that (1) Bradshaw "was in the exercise of ordinary care in the handling of his automobile", and (2) Emma Bond, mother of deceased, and sole beneficiary of any recovery, was "guilty of proximate contributory negligence or such negligence as proximately contributed to the injury of the child which resulted in his death"; hence barred from recovering, and (3) "the acts of the mother, plus the act of the child, combined to constitute the proximate cause of the accident"; that, assuming negligence upon the part of the Bradshaws, that negligence was not the proximate cause of the accident.

In considering the merits of Bradshaws' motion for a directed verdict, the Courts may consider only that evidence which is most favorable to the administrator,

without regard to contradictory testimony. The following statement of the case is on that basis.

The Bradshaw car was traveling west on the north side of that heavily traveled hard surface highway No. 70 leading to Memphis, and had reached a point about one mile West of Brownsville when the accident occurred.

The deceased was a negro boy approximately five and one-half years of age. He lived with his mother in their home on the south side of, and close to, this highway. The source of domestic water supply of this family was at the home of their farmer landlord across, and a few hundred feet up, the highway. It was necessary to cross this highway daily in going for water. On occasions the deceased participated in fetching water. On this occasion he and a little negro girl, a visitor, who was a year and some months older than he, started from his home to get water.

When Bradshaw topped a hill 600 to 700 feet East of the accident he saw these two children standing on the south shoulder of this highway. They remained in his clear view and gaze until the accident. He was driving at a speed of sixty miles an hour. He did not then check this speed, but assumed they would not attempt to cross until he had passed.

The impact occurred three and one-half feet north of the center line of this twenty feet wide traveled portion of the road. This child, therefore, after starting across in Bradshaw's unobstructed view, traveled not less than 13½ feet across this highway before he was struck. It is assumed in the reply brief of the Bradshaws that he was traveling four miles per hour. If so, the Bradshaw car was traveling fifteen times that speed at the time Bradshaw saw this child start across the highway. Thus, this

car traveled approximately 202.5 feet from the time Bradshaw saw this child start across the highway until the impact, unless its speed was checked in the meantime.

The first sign of the application of brakes by Bradshaw was at a distance of approximately forty feet east of the point of impact, and these skid marks were very light at the beginning point. The brakes were in good condition. These marks continued West of the point of impact in a semicircle and across the highway and back east to the point where the Bradshaw car came to rest, having completely reversed its direction in traveling one hundred feet after the impact.

The case of *Townsley v. Yellow Cab Company,* 145 Tenn. 91, 237 S.W. 58, deals with the question of when a trial judge is not justified in directing a verdict in favor of a defendant in cases where that defendant is connected with an accident in which a child of tender years has been injured. The rule there announced, or re-enunciated, has been approved and followed repeatedly by the Appellate Courts of this State. See, for instance, *Cartwright v. Graves,* 182 Tenn. 114, 127, 184 S.W.2d 373.

 The child killed in *Townsley v. Yellow Cab Company, supra,* was a girl eleven years old. The Court had directed a verdict for the defendant. It was a traffic accident in which the driver of the defendant's car had observed this child as she started to cross the highway. This Court, in holding that it was error to direct a verdict, said:

" 'Children, wherever they go, must be expected to act upon childish instincts and impulses; and others who are chargeable with a duty of care and caution towards them, must calculate upon this, and take precaution accordingly.' * * *

"Taking into consideration their tender years and consequent irresponsibility, did the operator of this taxicab have a right to assume that the children would remain stationary until he passed them? * * *

If the chaffeur was justified in putting his car in motion before the children had passed across, should he not have had it under such control as to avoid any collision that a childish impulse might render probable?

\* \* \* \* \* ·

"We cannot rest easily on the conclusion that the operator of this taxicab under the circumstances of this case as a matter of law acted with ordinary prudence. We think this is a question about which reasonable minds might differ and the answer thereto should have come from the jury."

■ Elaboration is unnecessary. It is conclusively established by *Townsley v. Yellow Cab Company, supra,* that under the evidence stated it was not less than a jury question as to whether Bradshaw was guilty of negligence (1) in not placing his car under such control as was necessary to avoid any collision that the known childish impulses of this child of such tender years might render probable, or (2) in assuming that such child would stand on the side of the highway without attempting to cross until Bradshaw's very swiftly moving automobile should pass.

■ It is next held by the Court of Appeals that, irrespective of negligence upon the part of Bradshaw, all reasonable minds must conclude that the mother of the deceased was guilty of proximate contributory negli-

gence that barred a recovery, she being the only beneficiary.

This conclusion is based on evidence that this mother sent this child across this highway to get the water. The opinion discusses in detail some evidence upon this point and concludes with the statement that such testimony is ''conclusive contradictions of Emma's testimony'' on the point. Again attention must be called to the fact that in testing the merits of the motion for a directed verdict an Appellate Court cannot be concerned with questions of conflicts in the testimony of various witnesses. It must take that view of the evidence which militates the strongest against the motion.

This mother testified that she did not send this child on this occasion for water, and did not know that he was going, or had gone, until the accident had occurred; that she was on the opposite side of the residence chopping kindling when the two children left; that she did not let the boy go across this highway to get water except ''sometimes'' with her; that on more than one occasion when he had slipped off and crossed that highway she had whipped him for so doing. Though the majority of the Court of Appeals seems to have considered the direct-testimony of Emma to have been entirely nullified by cross-examination, this Court gets the same impression from a reading of that testimony that the jury evidently received, to-wit, that the cross-examination did not, in an overall view, materially contradict her testimony responsive to the general direct-examination.

If the testimony of this mother is true, it cannot be concluded as a matter of law that this mother was guilty of proximate contributory negligence. It is true that she was substantially contradicted by the testimony of other

witnesses. But her testimony, and those contradictions, simply made a question of fact for the jury. It has determined the question in her favor. That determination is conclusive on appeal.

█ Finally, it is held by the Court of Appeals that all reasonable men must conclude from the evidence that "the acts of the mother, Emma Bond, plus the act of the child, combine to constitute the proximate cause of the accident". In so holding it disclaims any intention of charging this five and one-half year old child with negligence. Therefore, when the Court of Appeals came to consider whose conduct was the proximate cause of this accident, it was bound to proceed on the basis that neither the mother nor the child was guilty of proximate negligence.

In *Fairbanks, Morse & Co. v. Gambill,* 142 Tenn. 633, 643, 222 S.W. 5, 7, this Court held:

"In determining what is proximate cause, the true rule is that the injury must be the natural and probable consequence of the act—such a consequence as, under the surrounding circumstances of the case, might and ought to have been foreseen by the wrong-doer as likely to flow from his act."

In a verdict, conclusive on appeal, it had been found that Mr. Bradshaw was the wrongdoer in failing to act, and in acting, in the respects mentioned.

█ As heretofore observed, it is a matter of common knowledge, and our cases so hold, that a child of the tender years of this deceased might do the very thing which this child did do, to-wit, suddenly start across that highway as the Bradshaw car approached. It has to follow that Bradshaw should have foreseen the likelihood

of running down this child if he did not bring his car under such control as was necessary to avoid such an accident. It was at least, therefore, a jury question as to whether his negligence in this respect was or not the proximate cause of the accident. Where minds may reasonably differ as to proximate cause, a jury question is made. *Moody v. Gulf Refining Company,* 142 Tenn. 280, 289, 218 S.W. 817, 8 A.L.R. 1243.

*Marion County v. Cantrell,* 166 Tenn. 358, 361, 61 S.W.2d 477, 478, is in point. The negligent act there was in leaving open an emergency door of a school bus. The Court held that the operator of the vehicle should reasonably have foreseen that some child might jump or fall out of this door; that, therefore, the accident resulting from such a jump or fall ''was a natural, probable, and proximate consequence of such negligence.'' So, in the instant case, it might well have been concluded, as the jury did, that the accident here was a natural, probable and proximate consequence of Bradshaw's negligence in failing to so control his car as to avoid the accident which he should have forseen as likely to happen in the event of his failure to so control the driving of his automobile.

The conclusion of this Court is that the Trial Judge correctly refused the motion of the Bradshaws for a directed verdict, and that the Court of Appeals erred in adjudging to the contrary. The administrator's assignments of error to this effect are sustained.

Mr. and Mrs. Bradshaw have filed petition for *certiorari* wherein they complain that the Court of Appeals erred in overruling several insistences made by them as to alleged errors of the Trial Court.

One of these insistences is that the Trial Judge should have admitted in alleged statement of Mr. Holt

to the effect that the accident was unavoidable. Mr. Holt did not see the accident. The alleged statement was nothing more than his opinion. His opinion is not competent evidence. It contradicts nothing he said as a witness.

Leotha Hood, a negro woman, was at the home of deceased's mother at the time of this accident. After the trial, she gave the Bradshaws an affidavit stating in substance that this mother did send this child on this occasion to the Holt residence to get water. This is said to be newly discovered evidence which entitled them to a new trial. Upon the hearing of the motion there was likewise presented another affidavit of this woman, taken in question and answer form, and wherein she said that she did not hear this mother tell this child to go after water.

In view of the conflicting statements made in the two affidavits, it is hardly reasonable to think that the testimony of this woman would be of any assistance to the Bradshaws in another trial. However that may be, this assignment must be overruled. Early in the trial, the mother of the deceased disclosed on direct-examination the fact that Leotha Hood was at the mother's house at the time this accident occurred, and that Leotha Hood lived in that community. Notwithstanding such information, no effort was made in behalf of the Bradshaws to ascertain the whereabouts of this woman or what she knew. Under such circumstances, the diligence exercised is insufficient to merit the granting of a new trial. Compare *Vincent v. State,* 50 Tenn. 120, 126-127, and *Nashville, C. & St. L. Railroad v. Jones,* 100 Tenn. 512, 522, 45 S.W. 681.

The Trial Court, after correctly charging the formula applicable in ascertaining damages, then added that the loss of services during the child's minority is another element to consider. The action of the two Courts below in holding that this additional instruction did not entitle the Bradshaws to a new trial is assigned as error.

In this suit prosecuted by the administratrix of the infant, the amount of damages recoverable is the pecuniary value of its life. Section 20-614, T.C.A.; *St. Louis, I. M. & S. R. Co. v. Leazer,* 119 Tenn. 1, 15, 107 S.W. 684; *Whitson v. T. C. Railway Co.,* 163 Tenn. 35, 39, 40 S.W.2d 396.

The record makes it apparent that this child was physically and mentally normal. Considering the very inflationary period within which we are living, it would seem to be true almost to the point of certainty that the value of the life of the child was not less than $5,000 awarded by the jury. Therefore, that alleged error was not prejudicial. Code Sections 27-116 and 117. (Harmless Error Statutes.) Practically the same question arose in *International Corporation v. Wood,* 8 Tenn. Civ. App. 10, 28. The verdict there was $7,500. In refusing to grant a new trial because of a like instruction, the Court said:

"However, we do not feel constrained to reverse the judgment for this error, because it is clear from the size of the verdict that the jury did not award more than fair compensation for the actual pecuniary loss sustained. The verdict does not indicate that the jury allowed any damages as solatium."

This Court denied *certiorari.*

Finally, complaint is made because of the failure of the Court to charge, as requested, that a person about

to cross a highway must look for approaching automobiles and must be presumed to have seen what should have been seen. In *Hadley v. Morris,* 35 Tenn. App. 534, 547, 249 S.W.2d 295, 301, a case to which our attention is called by the administrator, this identical instruction, in effect, is held to be "a positive error of law" with the statement that:

"The effect of the instruction is to make the deceased child guilty of negligence for failure to stop, look and listen, regardless of the circumstances."

*Certiorari* was denied in that case.

All errors assigned in the *certiorari* petition of Mr. and Mrs. Bradshaw will be overruled. The hereinbefore discussed errors assigned in the petition of the administrator are sustained. The judgment of the Court of Appeals will be reversed and that of the Circuit Court affirmed with all costs accrued by reason of the appeal adjudged against the Bradshaws and their sureties.