**Ruby Maxey STROTHER, Plaintiff-Appellee,**

v.

**Carl H. LANE, Jr. and Nashville Transit Company, Defendants-Appellants.**

Court of Appeals of Tennessee, Middle Section.

Feb. 25, 1976.

Certiorari Denied by Supreme Court June 20, 1977.

Herbert R. Rich, Nashville, for plaintiff-appellee.

John D. Whalley, Barksdale, Whalley, Gilbert & Frank, Nashville, for defendants-appellants.

## OPINION

SHRIVER, Presiding Judge.

### —The Case—

This is a suit to recover for the wrongful death of an eleven year old boy who was struck by a bus of the defendant Transit Company as it was backing along a street in Nashville.

The case was tried to a jury and resulted in a verdict and judgment for $75,000.00, from which the defendants have appealed and assigned errors.

### —The Facts and Proceedings Below—

The complaint, filed December 21, 1971, recites that the plaintiff is the mother and next-of-kin of Joseph Carl Wilson who died April 23, 1968 in Nashville, Tennessee from injuries received when he was struck by a bus belonging to the defendant, Nashville Transit Company, and operated by the defendant, Carl H. Lane, Jr. It is alleged, and the record shows that on April 23, 1968, at approximately 3:15 P.M., plaintiff's son was walking home from Howard School and, as he crossed Middleton Street, he was struck by a Nashville Transit Company bus operated by defendant Lane, and died within a few minutes thereafter as a result of

his injuries. It is alleged that her son, Joseph, was ten years of age at the time of the accident and a fourth grade student in Howard Elementary School. The record shows that he would have reached his eleventh birthday in less than a month after the date of the accident.

It is alleged, and the record shows that the boy was struck by the left rear portion of the bus as it was being backed in an easterly direction along the north side of Middleton Street.

It is charged that defendant Lane was negligent in that he failed to give any warning as he proceeded to back the bus along the street; that there were many children nearby; that defendant was negligent in failing to keep a proper lookout behind him as he backed the bus along the street.

Without objection, the complaint was amended before the trial to add a statutory count based on alleged violation by the defendant of T.C.A. § 59–864 relating to limitations on backing vehicles.

Plaintiff's suit was for $100,000.00

Defendants filed a plea of the general issue of not guilty and moved the Court for a directed verdict in their behalf at the conclusion of the plaintiff's proof, which motion was overruled and which was renewed at the conclusion of all of the evidence and again overruled and, as hereinabove stated, the trial resulted in a verdict and judgment for $75,000.00 and, following the overruling of the motion for a new trial, said cause was appealed to this Court and assignments of error filed.

Counsel for plaintiff-appellee, in his brief and argument, recites the relevant facts which are, in substance, as follows:

Mr. Lane, the operator of defendant's bus, had driven the first of three buses delivering approximately fifty grammar school children each to the Children's Theater located on the same grounds with the Children's Museum, a playground, a high school, and the grammar school attended by plaintiff's son at a time shortly after pupils had been released for the day from the above mentioned schools.

The record shows that the driver was familiar with the area and was aware of the presence of the many children in this area in addition to those who had been transported there by defendant's buses.

After discharging his passengers, Mr. Lane, the driver, continued north on a driveway through the grounds of the school, which grounds he had entered from the south and, on leaving the north end of the driveway, he turned left, or westerly on Middleton Street which borders the grounds of the schools and museum on the north. He pulled his bus as near as possible to the north curbing of the street, whereupon, for the purpose of getting in position to re-enter the same driveway later to pick up his passengers for their return trip, the driver decided to back his bus eastwardly about 175 feet along the curb of the street.

As is shown by the evidence, the driver did not consider the alternative of driving around the block so as to have a clear view ahead at all times, nor did he seek the assistance of available bus company employees to stand outside and keep watch as he backed along the street.

As testified by defendant Lane, when he came to a stop in preparation for backing the bus, he put it in reverse, then stood up in a crouching position with his foot on the brake, and looked back to the rear, and seeing no children or other obstruction, he sat down and began backing, looking alternately from the mirror over the windshield to the outside left rear view mirror. It appears that he was proceeding from five to fifteen miles an hour, depending upon which estimate the jury accepted, and that there was no obstruction to his view to the left toward the driveway from which the deceased child came before the bus struck him.

The driver never saw the boy before he was struck. His first knowledge of the accident was when he heard a scream and saw a school book on the road some five feet to the left rear of his bus as he looked through the left rear view mirror. On

hearing the scream, he "jammed on the brakes," and "froze" in apparent shock from what he realized had happened.

Aside from the testimony of the defendant driver, the only eyewitness to the accident was Patricia Robertson who was called as a witness for the plaintiff. She testified that she was walking up Middleton Street and saw the bus come out of the driveway and across the road while another bus came up behind the first one which came out of the driveway from the theater. She saw the bus driven by defendant Lane as it started backing along the curb on Middleton Street. She saw the little boy come out of the driveway beside the other bus and he proceeded at an angle as he came out on the curb. She stated:

". . . He came, I guess, about six feet out off the curb and he stopped and he looked both ways to see if there was anything coming. And I would say he looked at the bus because he looked straight across in front of him. Then he went right at an angle and went right behind the bus. And when he got behind the bus, the bus struck him and knocked him down."

On cross-examination, she stated that after the boy was struck and thrown to the pavement, he never did regain consciousness.

—Assignments of Error—

There are five assignments of error which we will discuss hereinafter.

*Assignment No. 1* is to the effect that it was error for the Judge to refuse to sustain the motion for a directed verdict since the jury found, as a matter of fact, that the deceased was capable of negligence in that it found him guilty of remote contributory negligence and that he was actually guilty of such contributory negligence as a matter of law as would bar a recovery.

*Assignment No. 2* assigns error on the ground of the excessiveness of the verdict as indicating passion, prejudice and unaccountable caprice on the part of the jury.

*Assignment No. 3* assigns error on the ground that there was no material evidence to support the verdict.

This assignment is obviously without merit and is, therefore, overruled.

*Assignment No. 4* charges error on the ground that the verdict and judgment were against the preponderance of the evidence.

■ As has been held in numerous cases, this assignment is not available to the defendants since we do not weigh the evidence where there is a jury verdict. *Lyman v. Bank,* 48 Tenn.App. 328, 346 S.W.2d 289 (1961).

This assignment is overruled.

*Assignment No. 5* is a reiteration of Assignment No. 1 to the effect that the jury verdict was inconsistent with a finding that the deceased was guilty of remote contributory negligence.

—Our Conclusions—

We will discuss Assignments Nos. 1 and 5 together. In considering these assignments we must bear in mind that we are dealing with the question of negligence as it applies to an eleven year old boy who was in the fourth grade at school and who, according to the evidence, was a normal child of that age.

The report of the jury in returning a verdict was as follows:

"FOREMAN: We, the jury, find the plaintiff of—plaintiff with remote contributory negligence—if we got it right awhile ago—and of the child—and find seventy-five thousand to be a just figure.

THE COURT: All right, ladies and gentlemen, Mr. Duncan, your foreman, says that it is the verdict of the jury that you find in favor of the plaintiff, and in the amount of $75,000.00. So say you all?

JURY: (All appeared to assent.)

THE COURT: Let me be absolutely sure I understand. $75,000.00 is the figure after taking into consideration the remote contributory negligence; is that right?

FOREMAN: Yes, sir, that's what we've been all this time on.

THE COURT: So say you all?

JURY: (All appeared to assent.)"

It is the insistence of the appellant that since the jury found the eleven year old boy to have been guilty of contributory negligence, this was tantamount to a finding that he was capable of negligence and that under the facts shown by this record, such negligence was, as a matter of law, proximate rather than remote and that it was such negligence as to bar a recovery.

The record shows that Middleton Street on which the accident occurred is forty feet wide and that the boy came out of an entrance way and, after proceeding some six feet into the street, he stopped and looked both to his left and to his right and, thus, did look in the direction of the bus. He then ran diagonally across the street and was struck by the rear of the bus as it backed along the north curb.

In undertaking to rationalize as to the reason the child proceeded across the street in the path of the backing bus, one might suppose that when the bus came within his vision it may have been either momentarily stopped or proceeding slowly and the child's impression may very well have been that the bus, if it were moving, was proceeding in a normal fashion forward along the right-hand side of the street. As he ran across the street diagonally, the bus was, thus, behind him or in a position that it was obscured from his vision.

■ It cannot be successfully contended by the defendant driver that he was free of proximate negligence in failing to see the boy as he came into the street and ran diagonally across and into the path of the bus.

In *West v. Southern Railway Co.,* 20 Tenn.App. 491, 100 S.W.2d 1004, it was held as follows:

"Engineer had no right, at least in the absence of a warning signal of an approaching train, to assume that a child [of tender years], even though he has seen the train, will act with discretion of an adult in remaining in a place of safety unless it is apparently of sufficient age and intelligence to understand the danger of its position.

"Children between the ages of seven and fourteen may or may not be capable of appreciating danger and exercising proper care in reference to it, depending on mental development, experience, and other circumstances.

"Presumption that a child is capable of exercising care for his own safety, the same as if he were a grown person, [does not exist] until the child is over fourteen years of age.

"Whether a child between the ages of seven and fourteen is guilty of contributory negligence is for [a] jury."

In *J. W. Owen, Inc. v. Bost,* 51 Tenn.App. 79, 364 S.W.2d 499 (1962), a jury verdict was affirmed wherein the driver of the Construction Company truck ran over a three year old child while the truck was backing down the roadway which was accessible to children and where he failed to keep a proper lookout to the rear and failed to supply a watchman to prevent the truck backing over children who frequented the area. The Court held that, while backing an automobile on a public street is not negligence per se, reasonable care requires a driver to look before starting to back a vehicle and to make sure that the way is clear and the driver must continue his lookout as he backs the vehicle.

In *Staley v. Harkleroad,* 501 S.W.2d 571, 573 (Tenn.App.1973), a nine year old child was involved in a collision with an automobile and the Circuit Judge directed a verdict in favor of the defendant but the Court of Appeals reversed, holding that the evidence created a jury issue as to whether the driver took such precautions as were necessary to avoid the accident. In the course of the Opinion written by Judge Matherne, the following statement from *Townsley v. Yellow Cab Co.,* 145 Tenn. 91, 237 S.W. 58 (1921), was quoted with approval:

" 'Children, wherever they go, must be expected to act upon childish instincts and impulses; and others who are chargeable with a duty of care and caution towards them, must calculate upon

this, and take precaution accordingly.' *Townsley v. Yellow Cab Co.* (1921) 145 Tenn. 91, 237 S.W. 58. See also *Bradshaw v. Holt* (1956) 200 Tenn. 249, 292 S.W.2d 30."

In *Country Maid Dairy, Inc. v. Hunter*, 57 Tenn.App. 138, 416 S.W.2d 367 (372) (1967), it was observed that the evidence supported a finding of negligence on the part of the driver (1) in backing the truck down the roadway which was accessible to small children without keeping a proper lookout to the rear; and (2) in failing to supply a watchman or lookout to prevent the truck backing over any of the small children who frequented the area.

Considering the facts in the instant case and the authorities dealing with the subject, we think the facts present a jury question as to negligence and contributory negligence; hence, Assignments Nos. 1 and 5 are overruled.

Assignment No. 2 complains of the excessiveness of the verdict. Counsel for appellants cite a number of cases dealing with the amount of verdicts which have been approved or disapproved by the Appellate Courts where the death of a child was involved, and it is argued that $75,000.00 is a grossly excessive award for an eleven year old child who had no earning capacity and who was not shown to have undergone pain and suffering before his death.

It is argued by counsel for the plaintiff that it is not known whether the child was rendered instantly unconscious from the blow struck by the collision with the bus or in his fall when his head struck the pavement and that he may have been conscious for a brief period before he died.

In view of the facts as they are revealed by this record, we doubt that the jury would have been justified in taking into account pain and suffering in arriving at their verdict. However, as has been said in numerous cases, there is no rule by which to measure the value of a life and the jury is in the best position to assess damages and, next to the jury, the Trial Judge is in the best position to evaluate damages, and

that great weight must be given to the judgment of the jury and the Trial Judge in the absence of any showing of misconduct.

As was said in *Crowe v. Provost*, 52 Tenn. App. 397, 374 S.W.2d 645 (1963), the amount of damages is primarily a question for the jury and their verdict is entitled to great weight in this Court when the Trial Court has approved it, if there is no claim that the verdict is corrupt or dishonest, citing *Phillips et al. v. Newport et ux.*, 28 Tenn.App. 187, 187 S.W.2d 965.

In said case the Court further observed that the great weight of authority is to the effect that substantial damages may be recovered by the parents of a minor child, notwithstanding the fact that such child had never been gainfully employed, such damage to be measured by the experience and judgment of the jury, enlightened by a knowledge of the age, sex and physical and mental characteristics of the child.

The Court further said:

"Since we have no mathematical formula to guide us as to the amount of damages to be allowed in negligence cases, we cannot say as a matter of law that we would be justified in substituting our judgment as to the amount of damages to be allowed in this case in preference to that of the Trial Judge who approved the verdict."

In *Lunn v. Ealy*, 176 Tenn. 374, 141 S.W.2d 893, the Supreme Court, quoting from *Reeves v. Catignani*, 157 Tenn. 173, 7 S.W.2d 38, said:

"The amount of the verdict is primarily for the jury to determine and, next to the jury the most competent person to pass upon the matter is the Judge who presided at the trial and heard the evidence. . . . Where the two Courts have agreed in this way on the amount of damages, our practice has been to treat such concurrence as 'well-nigh conclusive.'"

From the evidence produced in this record, we are not prepared to say that the verdict is so excessive as to indicate passion, prejudice or unaccountable caprice on the

part of the jury; hence, the assignment is overruled.

It results that the judgment of the Trial Court is affirmed.

AFFIRMED.

DROWOTA, J., concurs.

TODD, J., partially dissents.

TODD, Judge, partially dissenting.

The principal opinion is correct in all respects except as to the amount of the verdict.

The measure of damages for wrongful death is the pecuniary value of the life of the deceased plus funeral expenses, where there was no proof of any pain and suffering. *Templeton v. Quarles*, 52 Tenn.App. 419, 374 S.W.2d 654 (1963).

The pecuniary value of a life is to be determined from the expectancy of life, age, condition of health and strength, and capacity, if any, for earning money, and personal habits as to sobriety or industry. *Sou. Ry. Co. v. Sloan*, 56 Tenn.App. 380, 407 S.W.2d 205 (1965).

The estimation of compensation for wrongful death must take into consideration not only the most optimistic expectations, but also the most pessimistic, and all uncertainties between the extremes. *Smith v. Bullington* (Tenn.App.1973), 499 S.W.2d 649.

Damages recoverable for wrongful death do not include grief, mental anguish, or loss of moral aid, comfort counsel or companionship. *Davidson Benedict Co. v. Severson*, 109 Tenn. 572, 72 S.W. 967 (1902).

In estimating the pecuniary value of the life of a minor child, there is good reason and logic in the insistence that the anticipated expenses of rearing, support, training and education should be considered in mitigation of the value of future earnings during adulthood. The decisions on this subject are not uniform. See 25A C.J.S. Death § 114, pp. 962, 963; 22 Am.Jur.2d, Death, § 170, pp. 727, 728.

In *Hildreth v. Key*, Mo.App., 341 S.W.2d 601 (1960), it was held that the measure of damages for the wrongful death of a minor child is the value of its services during minority plus burial expenses and other incidental expenses, less the expense of support and maintenance during minority.

Even though juries are not ordinarily instructed to consider support and maintenance in mitigation of anticipated earnings, it is obvious that they do so, for verdicts for the death of children with a long life expectancy are uniformly less than verdicts for death of adults.

In addition to considerations of expense of rearing and uncertainty of life and future development of earning capacity, there is, in the present case, the unequivocal report of the jury on remote negligence which must mitigate the recovery.

Furthermore, the amounts awarded in similar cases must be given some consideration in order to preserve some sensible consistency in verdicts of juries and resultant judgments. To this end, a tabular analysis has been prepared showing dates, age of deceased, and approved damages in cases annotated in 8 Tenn.Digest, Death ⊛99(3), (supplement), and same is reproduced as follows:

| | | |
|---|---|---|
| 1951 – | 6 years | – $20,000.00 |
| 1952 – | 8 years | – 15,000.00 |
| 1956 – | 8 years | – 20,000.00 |
| 1960 – | 11 years | – 22,500.00 |
| 1961 – | 3 years | – 17,500.00 |
| 1961 – | 16 years | – 19,000.00 |
| 1963 – | 22 months | – 25,000.00 |
| 1963 – | 4 years | – 10,000.00 |
| 1965 – | 9 years | – 50,000.00 |
| 1966 – | 11 years | – 20,000.00 |

It is recognized that no amount of money can compensate a parent for the loss of a child. Without the wrongful death statute, there could be no recovery at all. The statute allows limited damages for wrongful death, described as "the pecuniary value of the life" (not value to the survivors, but value to the deceased).

The limited recovery allowed by statute should not be permitted to expand beyond the bounds of reason and the intent of the statute.

To approve a verdict of $75,000.00 where remote negligence required a mitigation would have the effect of approving compensation substantially in excess of $75,000.00 in a comparable case where remote negligence was not present.

Accordingly, this Court should suggest a remittitur of $25,000.00 and grant a new trial if same is not accepted.