# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE

**BERNICE ROTHSTEIN AND AARON ROTHSTEIN, Individually and as next of kin of LISA GAYLE ROTHSTEIN, Deceased, v. ORANGE GROVE CENTER, INC., and CHRISTOPHER D. PRATER, M.D.**

### Direct Appeal from the Circuit Court for Hamilton County
### No. 95 CV 2147    Hon. W. Neil Thomas, Circuit Judge

---

### No. E1999-00900-COA-R3-CV - Decided May 25, 2000

---

In this wrongful death action, the jury returned a verdict of $275,000.00 for the plaintiffs. The Trial Judge suggested a remittitur of $75,000.00 which plaintiffs accepted under protest. All parties have appealed, raising numerous issues, including whether plaintiffs should have been allowed to seek loss of consortium, and the propriety of directing a verdict for punitive damages, and whether a claim for negligent infliction of emotional distress should have been allowed, as well as issues relating to the admissibility of evidence.

**Tenn. R. App. Appeal as of Right; Judgment of the Circuit Court Affirmed.**

FRANKS, J., delivered the opinion of the court, in which SUSANO, J., and SWINEY, J., joined.

David Earl Harrison, Grant, Konvalinka & Harrison, and Samuel Richard Anderson, Luther Anderson, Chattanooga, Tennessee, for Defendants-Appellees.

Thomas H. Dundon and William David Bridgers, Neal & Harwell, Nashville, for Plaintiffs-Appellants.

### OPINION

Plaintiffs brought this wrongful death action for the death of their daughter, Lisa, who was a 35 year-old woman with mental retardation and a mild seizure disorder. The action was filed against the Orange Grove Center, Inc. ("Orange Grove"), the group home where Lisa resided, and Dr. Christopher Prater ("Dr. Prater"), the physician employed by Orange Grove for

the care of its clients.

The record establishes that Lisa Rothstein was enrolled at Orange Grove Center at age 14, where she lived until the date of her death at age 35, except for 36 therapeutic days per year when she lived with her family. In the month of November, prior to Thanksgiving, Lisa complained of headaches and was administered Tylenol by Debbie LaDuke, the house manager, pursuant to a standing order. The house manager consulted the nurses at Orange Grove about Lisa's headaches and fever which persisted, and Dr. Prater was consulted, who gave the nurse an order for ibuprofen. On Sunday, November 20, 1994, the Rothsteins called the center, inquiring about Lisa. On Tuesday, November 22, Mrs. LaDuke took Lisa to Dr. Prater, who ordered a complete blood count, as well as other blood tests. On Tuesday evening Mrs. LaDuke called the on-call nurse, Deborah LaRosh, to report a breathing problem which was of concern. It was reported that Lisa would emit a honking sound which would cease when people walked away. Dr. Prater advised Mrs. LaDuke to take Lisa to the emergency room if the honking noise persisted. On the morning of November 23, 1994, Lisa had stopped breathing, although her body was still warm when found. The autopsy revealed that Lisa had died of bacterial meningitis.

Prior to trial, various motions were filed by the defendants, and the Trial Court dismissed plaintiffs claims of spoliation of evidence, loss of consortium, and abandonment. At the close of the proof, the Trial Judge granted a directed verdict to defendants on the issue of punitive damages, and the jury returned a verdict in plaintiffs' favor of $275,000.00. The jury apportioned fault at 20% to Orange Grove and 80% to Dr. Prater.

Post-trial motions were filed by all parties, and in response to the motions, the Trial Judge suggested a remittitur of the award down to $200,000.00, which the plaintiffs accepted under protest, and the appeals ensued.

Plaintiffs claimed loss of consortium at the pleading stage, which the Trial Judge ruled were not allowed in wrongful death actions. On January 25, 1999, after the trial had concluded, the Supreme Court decided *Jordan v. Baptist Three Rivers Hospital*, 984 S.W.2d 593 (Tenn.1999), which reversed the earlier case law that held loss of consortium damages to be non-compensable in wrongful death actions in this State. The *Jordan* case held that the language of the wrongful death statute (Tenn. Code Ann. §20-5-113) entitled survivors to be compensated for their loss of consortium, and reversed its earlier ruling in *Davidson Benedict Co. v. Severson*, 72 S.W. 967 (Tenn. 1903). The Court specifically found that loss of spousal consortium and loss of parental consortium claims were proper, but did not necessarily limit claims of loss of consortium to only those situations. *Id.*

Plaintiffs strenuously argue that on the authority of *Jordan* they should be entitled to recover loss of consortium, and that this element of damage should be applied retrospectively to cases pending at the time *Jordan* was released.

Plaintiffs concede, however, as they must, that two recent cases from the Western

Section of this Court have denied application of the *Jordan* decision to cases pending on appeal at the time of its release. *See Hill v. City of Germantown*, 1999 WL 142386 (Tenn. Ct. App. March 17, 1999), *perm. app. granted* Sept. 20, 1999; *McCracken v. City of Millington*, 1999 WL 142391 (Tenn. Ct. App. March 17, 1999).

We believe the Western Section of this Court reached the correct result. Article I, §20 of the Constitution of Tennessee provides that "no retrospective law, or law impairing the obligations of contracts, shall be made." In *Blank v. Olsen*, 662 S.W.2d 324 (Tenn. 1983), the Supreme Court said, quoting with approval, Am.Jur.2d *Court* §234, that the overruling of a judicial construction of a statute will not be given retrospective effect where rights are vested, and the decision will be treated as in effect a legislative change of a statutory rule. Clearly, *Jordan* overruled a prior judicial construction of a statute establishing rights of parties, bringing *Jordan* within the constitutional prohibition. This rule is sometimes confused with the common law rule, which the Court may, if it so expresses, make its ruling retrospective when making changes in the common law. This is because as a general rule rights are not vested under common law principles, and are subject to be changed by the courts. *See, e.g., McIntyre v. Ballentine*, 883 S.W.2d 52 (Tenn. 1992), where the Court changed the common law rule as to negligence. In that case, the Court expressed that the principles of *McIntyre*, would apply to cases tried or retried after the date of the opinion, and all cases on appeal in which the comparative fault issue had been raised at an appropriate stage of the litigation. *Id.* at 58. We affirm the Trial Judge's ruling on this issue.

Plaintiffs argue that the issue of punitive damages should have been submitted to the jury.

Punitive damages are only proper where a defendant has acted intentionally, fraudulently, maliciously, or recklessly. *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896 (Tenn. 1992). The Supreme Court has defined these terms as follows:

> A person acts intentionally when it is the person's conscious objective or desire to engage in the conduct or cause the result. A person acts fraudulently when (1) the person intentionally misrepresents an existing, material fact or produces a false impression, in order to mislead another or to obtain an undue advantage, and (2) another is injured because of reasonable reliance upon that representation. . . . A person acts recklessly when the person is aware of, but consciously disregards, a substantial and unjustifiable risk of such a nature that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances.

*Hodges*, at 901. Further, plaintiffs must prove such conduct by clear and convincing evidence, since punitive damages are to be awarded in "only the most egregious of cases". *Id.*

In this case, we are required to take the strongest legitimate view of the evidence in plaintiffs' favor on the issue of whether defendants acted intentionally, fraudulently, or recklessly.

Plaintiffs essentially argue that the Orange Grove staff and Dr. Prater acted recklessly in failing to properly treat Lisa for a period of six days prior to her death, and that they attempted to conceal their omissions. While it is clear under the totality of the circumstances the defendants were negligent in their management of Lisa's illness, the evidence is not clear and convincing that any of the staff of Orange Grove or the physician acted intentionally, maliciously or recklessly in their care for Lisa. We affirm the Trial Court's direction of a verdict on the issue of punitive damages.

Plaintiffs also argue that the Trial Judge erred in granting defendants' motion for judgment on the pleadings regarding the claim of negligent infliction of emotion distress. In this regard, the Trial Court's action is reviewed as would be the grant of a summary judgment on this issue. Viewing the evidence in this matter, it is clear that plaintiffs had telephone contact with Lisa, Mrs. LaDuke and Ms. Foster during the course of Lisa's illness, and that they were concerned about Lisa's health. It is also clear, however, that the plaintiffs were not aware of the severity of Lisa's condition, because they admitted that they were still planning on Lisa's coming home for Thanksgiving on Wednesday. They felt "reassured" after speaking with Ms. Foster, and on Tuesday they were told Lisa was "quiet and sleeping".

In order to make out a prima facie case of negligent infliction of emotional distress, plaintiffs must present material evidence of the five elements of general negligence, i.e., duty breach, injury, causation in fact, and proximate or legal cause. *Camper v. Minor*, 915 S.W.2d 437 (Tenn. 1996). In order to establish a duty to plaintiffs, they must show that their emotional injury was a foreseeable result of defendants' negligence, and by showing that they were in sufficient proximity to have a "sensory observation" of the injury-producing event. *Ramsey v. Beavers*, 931 S.W.2d 527 (Tenn. 1996).

There is no question that plaintiffs have suffered great emotional distress as a result of Lisa's death, as would any parent from the unexpected death of a beloved child. This does not, however, place plaintiffs in sufficient proximity to the injury-causing event such that their emotional distress was a foreseeable result. We affirm the Trial Court's ruling that the plaintiffs have not presented sufficient evidence of negligent infliction of emotional distress to be considered by the jury.

Finally, plaintiffs argue that the jury's verdict was proper and should not have been reduced by the Trial Court. Defendant argued the jury's verdict was the product of passion, prejudice and caprice, and was so far beyond the bounds of reason that a new trial is warranted. In wrongful death actions, the jury can award damages for the decedent's pain and suffering, medical and funeral expenses, and the pecuniary value of the decedent's life. *See Jordan*. Tenn. Code Ann. §20-10-102 provides that this Court shall review the Trial Judge's suggestion of remittitur by using the standard of review set forth in Tenn. R. App. P. 13(d). Accordingly, we review the reduced award *de novo* upon the Trial Court record with a presumption of correctness, unless the evidence preponderates otherwise. *Coffey v. Fayette Tubular Products*, 929 S.W.2d 326 (Tenn. 1996).

The evidence demonstrates that Lisa died from bacterial meningitis, the onset of which was probably 36-72 hours before her death. There is evidence that Lisa complained of headaches, vomited, and ran a fever. There is also testimony that Lisa was engaging in unusual and aggressive behavior, that she experienced some type of wheezing/breathing problems, and that she was agitated and crying and could not be calmed. The evidence is such that the jury's award of damages was essentially based on pain and suffering of the deceased, which does not easily calculate into an exact dollar figure for the purposes of awarding damages. *See Strother v. Lang*, 554 S.W.2d 631 (Tenn. Ct. App. 1976). When the Trial Court finds the jury verdict is excessive, i.e., beyond the range of reasonableness, there is a preference that the trial court suggest a remittitur, rather than granting a new trial. *See Coffey*; *Foster v. Amcon Int'l, Inc.*, 621 S.W.2d 142 (Tenn. 1981). Next to the jury, the trial judge is in the best position to determine the proper amount of damages awarded, and great weight should be given to the trial judge's decision. *Strother v. Lane*, 554 S.W.2d 631 (Tenn. Ct. App. 1976). We conclude that the evidence does not preponderate against the verdict as remitted by the Trial Judge. *Miller v. Williams*, 970 S.W.2d 497 (Tenn. Ct. App. 1998); *Benson v. Tennessee Valley Elec. Co-op.*, 868 S.W.2d 630 (Tenn. Ct. App. 1993). We affirm the judgment as entered by the Trial Court on the remitted verdict.

Appellees have raised as issues, the admission of testimony of certain witnesses, the admission of phone slips from after Lisa's death, the testimony of Dr. Harlan regarding the onset of meningitis and the refusal to give a requested jury instruction. We have reviewed these issues and conclude they are either without merit or constitute harmless error.

Orange Grove argues the Trial Court should have granted a directed verdict on the issues of nursing malpractice, because plaintiffs did not prove causation as to their alleged breaches of the standard of care by the nursing staff. Orange Grove contends, and plaintiffs concede, that plaintiffs' nursing expert, Nurse Stroud, did not offer an opinion as to causation. But when Nurse Stroud's testimony as to deviations from the standard of care is coupled with the testimony of other experts, material evidence of causation is established.

Finally, Orange Grove contends that the Trial Judge should have granted a directed verdict on plaintiffs' claims of negligence against non-medical personnel, because the claim is either barred by the statute of limitations, or the plaintiffs failed to prove a prima facie case of common law negligence. As to the statute of limitations issue, Orange Grove argues that common law negligence was not pled until plaintiffs filed their Amended Complaint in July 1997, approximately 2 ½ years after Lisa's death. It is argued that the common law negligence claim should not relate back under Tenn. R. Civ. P. Rule 15, because it is a new cause of action. The cases are clear, however, that if the claim arises out of the same conduct, transaction, or occurrence alleged in the Complaint, it will relate back to the time of the Complaint, and the critical issue in determining whether the claim arises from the same conduct, transaction or occurrence is whether the facts alleged in the original Complaint would put the defendants on notice that they may have to defend the claim. *Floyd v. Rentrop*, 675 S.W.2d 165 (Tenn. 1984); *Karash v. Pigott*, 530 S.W.2d 775 (Tenn. 1975); *Rainey Bros. Const. Co., Inc. v. Memphis & Shelby County Bd. of Adjustment*, 821 S.W.2d 938 (Tenn. Ct. App. 1991).

-5-

The facts alleged in the original Complaint, placed Orange Grove on notice that it would likely be defending a common law negligence claim. Plaintiffs alleged facts concerning Orange Grove non-medical personnel and their acts/omissions, and stated: "As a proximate result of Defendant Prater's and possibly other Orange Grove employees' negligent actions and omissions, Lisa Gayle Rothstein and plaintiffs suffered injuries which would not otherwise have occurred." The allegations placed Orange Grove on notice that plaintiffs were alleging that its employees were negligent, and that the negligent claim arose out of the same conduct, transaction and occurrence that is the gravamen of the original Complaint.

Viewing the evidence in the light most favorable to the plaintiffs on this issue as is required on Motion for Directed Verdict, it is apparent that non-medical Orange Grove employees were involved in the chain of events which led to Lisa's death.

For the foregoing reasons, we affirm the judgment of the Trial Court and remand with the cost of the appeal assessed one-half to plaintiffs and one-half to defendants.