SHOLODGE FRANCHISE SYSTEMS, INC., )
)
)
     Plaintiff/Appellant, )
)
)   Davidson Chancery
)   No.  93-97-II
VS. )
)
)   Appeal No.
McKIBBON BROTHERS, INC., )   01-A-01-9506-CH-00240
)
     Defendant/Appellee. )

**FILED**

**December 18, 2001**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

IN THE COURT OF APPEALS OF TENNESSEE

MIDDLE SECTION AT NASHVILLE


APPEAL FROM THE CHANCERY COURT OF DAVIDSON COUNTY

AT NASHVILLE, TENNESSEE


HONORABLE C. ALLEN HIGH, CHANCELLOR

Eugene N. Bulso, Jr.
Larry G. Hayes, Jr.
BOULT, CUMMINGS, CONNERS & BERRY
414 Union Street, Suite 1600
P.O. Box 198062
Nashville, Tennessee  37219
ATTORNEY FOR PLAINTIFF/APPELLANT


John E. Quinn
MANIER, HEROD, HOLLABAUGH & SMITH
2200 First Union Tower
150 Fourth Avenue, North
Nashville, Tennessee  37219
ATTORNEY FOR DEFENDANT/APPELLEE

AFFIRMED AND REMANDED

                HENRY F. TODD
                PRESIDING JUDGE, MIDDLE SECTION

CONCUR:
SAMUEL L. LEWIS, JUDGE
WILLIAM C. KOCH, JR., JUDGE

SHOLODGE FRANCHISE SYSTEMS,     )
INC.,                           )
                                )
    Plaintiff/Appellant,         )
                                )   Davidson Chancery
                                )   No.  93-97-II
VS.                             )
                                )
                                )   Appeal No.
McKIBBON BROTHERS, INC.,         )   01-A-01-9506-CH-00240
                                )
    Defendant/Appellee.          )

O P I N I O N

The plaintiff counter-defendant, ShoLodge Franchise Systems, Inc. (hereafter "Sholodge") has appealed from a jury verdict of $327,272 in favor of the defendant counter-plaintiff McKibbon Brothers, Inc. (hereafter McKibbon) for damages for breach of a franchise contract.

Issues presented on appeal by Sholodge are:

    1.  Whether ShoLodge breached the license agreement, and if so, whether the breach was material.

    2.  Whether the Trial Court properly discharged its role as the thirteenth juror.

    3.  Whether the jury's award of damages is supported by the record.

On July 10, 1989, Sholodge and McKibbon executed a "Shoney's Inn License Agreement" authorizing McKibbon to construct and operate a "Shoney's Inn" on Highway 341 at Perry, Georgia for a period of twenty years.  The initial license fee was agreed to be $150 per room with a minimum total of $15,000.  A continuing fee of 3% of gross sales in each month was payable on the tenth of the following month.

Sholodge agreed:

    8.  Warranties of Licensor.  . . . (a)  To make available to Licensee the privilege of consulting with Licensor's officials and staff upon problems relating to design, construction, operation, marketing and advertising, so that Licensee will

have available to it any experience of Licensor and other licensees relating to such problems.

. . . .

(e) To maintain supervision over all licensees in order to assure compliance with Licensor's standards and policies as from time to time established, and with Licensor's rules of operation.

(f) To encourage the ever-increasing use of Shoney's Inns on a national basis.

The agreement contained the following pertinent provisions for termination:

12. Termination. Licensor may, at its option, upon the occurrence of any one or more of the following events, terminate this Agreement:

(a) If Licensee fails to pay any amount due to Licensor hereunder and fails to cure such failure within ten (10) days after Licensor gives written notice to cure.

(b) If Licensee fails to perform or breaches any covenant, obligation, term, condition, warranty or certification herein and fails to cure such breach or fails to perform within thirty (30) days after Licensor gives written notice to cure.

. . . .

(n) If Licensee serves any food, or allows any food service on the premises, without the express written consent of Licensor.

13. Obligations Upon Termination. Upon the termination or expiration of this Agreement, Licensee shall cease to be a Licensee of Licensor, and:

(a) Licensee shall immediately cease to operate the former Licensed Unit under the System, and shall not thereafter, directly or indirectly, represent to the public that the former Licensed Unit is operated under the System, or hold itself out as a present or former licensee of Licensor.

. . . .

(d) Licensee shall immediately make such modifications or alternations as may be necessary to distinguish the former Licensed Unit and the Premises effectively from its former appearance and from any other Shoney's Inn System Unit, and to prevent the operation of any business on the Premises by Licensee or others in derogation of this Agreement, . . . .

The agreement also contained the following:

20. Restaurant. . . .

(b) So long as the restaurant is being operated adjacent or in relative proximity to the Shoney's Inn, Licensee shall not offer or provide any food or food service at the Licensed Unit for either on or off-premises consumption without the express written consent of Licensor. Provided, however, that Licensee shall be allowed to operate vending machines selling soft drinks, coffee and snacks on the Premises.

On January 12, 1993, Sholodge filed its complaint, alleging:

. . . 5. Pursuant to Section 12(a) of the Agreement, Shoney's may terminate the Agreement if Licensee fails to pay any amount due within ten (10) days of Shoney's giving written notice to pay.

6. By letter dated December 22, 1992, and attached hereto as Exhibit "2" (the "Letter"), Shoney's gave Licensee notice that Licensee was in violation of the Agreement and demanded all payments due under the Agreement, which demand was refused by Licensee in further violation of the Agreement.

8. On January 3, 1993, Shoney's terminated the Agreement pursuant to Section 12(a).

9. Pursuant to Sections 13(a) and 18 of the Agreement, Licensee is required to pay upon termination all sums owing Shoney's including actual damages, costs, expenses, court costs and reasonable attorneys' fees incurred by Shoney's as a result of the default.

10. Pursuant to Section 13(e) of the Agreement, Licensee owes Shoney's a royalty fee in the amount of $347,496.76; and also currently owes Shoney's past due royalties, marketing and reservation fees in the amount of $5,610.00.

On April 30, 1993, McKibbon filed its answer admitting the execution and violation of the contract, but asserting that various of its provisions were invalid and that Sholodge rescinded the contract by violations including the following:

. . . 3. Beginning in 1991 the parent company, Shoney's Inc., obviously began losing interest in the Shoney's Inns concept and as a result development slowed as did the effort to promote Shoney's Inns on a national basis.

4. Eventually in 1992, Shoney's, Inc. sold its interest in Shoney's Lodging, Inc., it became Sholodge and Sholodge continued to ignore development of a national chain and failed to develop a national reputation.

5. By 1992, the plaintiff was receiving an average of only one to two reservations per day from the central reservation system and Shoney's Inns had no national name recognition and in particular, no name recognition in the Midwest from which plaintiff's primary potential market came.

6. In addition, Sholodge permitted some of the Shoney's Inns in the system to serve food in violation of the provisions of the contract which created an expectation in the consuming public which was contrary to the terms of counter-plaintiff's contract.

7. In addition, Sholodge failed to supervise and inspect other Shoney's Inns within the system so that the reputation of the entire chain was damaged.

8. By the summer of 1992, counter-plaintiff was losing money and when plaintiff attempted to consult with and obtain the assistance of the franchisor, Sholodge, pursuant to the provisions of paragraph 8(a), in an effort to resolve counter-plaintiff's problems, counter-defendant failed or refused to assist, in violation of the agreement.

9. Throughout the fall of 1992, the plaintiff continued to lose money and continued to attempt to consult with and obtain the advice and assistance of Sholodge without avail. Eventually plaintiff requested that the parties release each other from the terms of the franchise agreement so that the plaintiff could attempt to salvage its business, and Sholodge demanded the sum of $350,000.00 and continued to refuse to address plaintiff's problems.

Sholodge responded, denying any breach of contract.

McKibbon was permitted to amend its counter-claim to allege fraudulent and negligent misrepresentation and to sue for $1,000,000.

Sholodge denied the material allegations of the amended counter-claim.

On December 7, 1994, following a jury verdict, plaintiff's suit was dismissed and judgment was entered in favor of McKibbon for $327,272.00.

On January 6, 1995, Sholodge filed its "Motion to Set aside Verdicts and Judgments and to Grant Plaintiff a New Trial" on the following grounds:

1. As thirteenth juror, this Court cannot reasonably accept the jury's verdicts because said verdicts are against the weight of the evidence.

2. There was no material evidence in the record upon which the jury could find that plaintiff materially breached the contract and therefore: (a) Defendant was not entitled to damages on its counterclaim, and (b) Defendant's only defense to plaintiff's claim must fail.

3. From the start, defendant ignored this Court's pretrial Order and trial rulings about defendant's putting on proof that plaintiff failed to grow to a national chain, thereby depriving plaintiff of a fair trial.

On April 10, 1995, the Trial Court entered the following order:

This matter came on for a hearing before the Honorable C. Allen High, Chancellor, on the 31st day of March 1995 on the Motion for New Trial filed by Plaintiff/Counter-Defendant, Sholodge Franchise Systems, Inc. Upon a review of the Motion and Brief filed by Plaintiff/Counter-Defendant, Sholodge Franchise Systems, Inc., the Response filed by Defendant/Counter-Plaintiff, McKibbon Brothers, Inc., the statements of counsel at the hearing on this matter, <u>weighing of all of the evidence at the trial of this case to determine if it preponderates against the jury's verdicts</u> and the entire record in this cause, from all which it appears to the Court, after due consideration, that the Motion for New Trial filed by Plaintiff/Counter-Defendant, Sholodge Franchise Systems, Inc., should be denied and overruled in all respects.

It is therefore ORDERED, ADJUDGED, and DECREED that the Motion for New Trial filed by Plaintiff/Counter-Defendant, Sholodge Franchise Systems, Inc., is DENIED. (Emphasis supplied.)

*-First Issue: Breach by Sholodge-*

On appeal, a finding of fact by a jury may not be reversed if there is any material evidence to support it. T.R.A.P. Rule 13(d). If, however, there is a question of law as to whether the facts found by the jury are legal support for the verdict and judgment, review is *de novo. Union Carbide Corp. v. Huddleston,* Tenn. 1993, 854 S.W.2d 87.

One of defendant's complaints was competition from other Sholodge franchisees which served continental breakfasts.

Section 12(N) of the agreement provides that the contract may be terminated:

> If Licensee serves any food service on the premises without the
> express consent of Licensor.

Section 8(e) of the subject agreement quoted above, required Sholodge to "maintain supervision over all licensees in order to assure compliance with Licensor's standards and policies . . . and with Licensor's rules of operation."

It is clear that serving food without special permission was contrary to the contract, policy and rules of Sholodge. There is ample evidence that other Sholodges in the vicinity did serve food and that this interfered with the patronage of defendant. This was a violation of the rules, policies, and contracts of Sholodge, unless special permission had been granted. The answer of Sholodge to the counter-claim denied that it had ever granted such permission. Under Section 8(a), above, Sholodge was obligated to prevent serving of food on the premises of its other licensees. The failure to do so was a breach of Section 8(a).

Defendant's other complaint was the failure of Sholodge to comply with Section 8(a) of the agreement, quoted above, which required Sholodge to:

> [M]ake available to Licensee the privilege of consulting with
> Licensor's officials and staff upon problems relating to . . .
> marketing and advertising, so that Licensee will have available
> to it any experience of Licensor and other Licensees relating to
> such problems.

There is evidence of the following facts:

In June, 1992, defendant's manager telephoned Sholodge seeking help in increasing patronage. He was told that he needed to talk to Chic Johnson. He obtained an appointment with Chic Johnson for June 25, 1992, and make a trip from Gainesville, Georgia to Sholodge headquarters in Gallatin, Tennessee for this purpose. On arrival he was told that Chic Johnson was on vacation and referred to several others in the Sholodge office, none of whom offered any assistance. Neither Chic Johnson or any other official of Sholodge contacted defendant further, except by letter demanding franchise fees. It later developed that the

Director of Operations was the proper person to assist defendant, but said defendant was never directed to him. There was testimony that defendant did not get "field support" from Sholodge.

There is material evidence of facts which legally support a verdict of breach of contract by Sholodge.

*-Second Issue: The Thirteenth Juror-*

The order of the Trial Court, quoted above, states:

> . . . weighing all of the evidence at the trial of this case to
> determine if it preponderates against the jury's verdicts . . . it
> appears to the Court . . . that the Motion for New Trial . . .
> should be denied. . . . (Emphasis supplied.)

Plaintiff insists that the emphasized verbiage, above, indicates that the Trial Court erroneously applied the standard of "does the evidence preponderate against the verdict" instead of the standard of "does the evidence preponderate in favor of the verdict."

Plaintiff argues that "the trial court must independently weigh the evidence . . . and reach the same verdict as the jury," citing *Miller v. Doe,* Tenn. App. 1993, 873 S.W.2d 346, wherein this Court held that the judge must independently weigh the evidence. The requirement that the judge "reach the same verdict" is not found in the cited opinion which does include "he must be satisfied, as well as the jury," and "unless the verdict has received the approval of the trial judge." The opinion also states:

> The obligation of a trial judge to act as a thirteenth juror in a
> civil trial in this sate is well established. *Cumberland
> Telephone & Telegraph Co. v. Smithwick,* 112 Tenn. 463, 79
> S.W. 803 (1904), reads in part as follows:
>
>> The rule in civil cases is that, if the circuit
>> judge is dissatisfied with the verdict of the jury,
>> it is his duty to set it aside and grant a new trial,
>> and that upon its being made to appear to this
>> court, from statements made by the circuit judge
>> in passing upon the motion for a new trial, that
>> he was really not satisfied with the verdict, it

becomes the duty of this court, when it has acquired jurisdiction of the cause, to do what the circuit judge should have done; that is, to grant a new trial on the ground of the dissatisfaction of that judicial officer with the verdict. (Citations omitted) . . . .

. . . .

If called upon to act as a thirteenth juror following the filing of a motion for a new trial, the trial judge simply approves a verdict without any comment, it is presumed by an appellate court that he has performed his function adequately. *Holden v. Rannick,* 682 S.W.2d 903, 905 (Tenn. 1984); *Central Truckaway System v. Waltner,* 36 Tenn. App. 202, 253 S.W.2d 985, 991 (1952).

In the event that the trial court does state his reasons, an appellate court is to examine them only for the purpose of determining whether the trial court properly reviewed the evidence, and was satisfied or dissatisfied with the verdict. *Smithwick, supra* 79 S.W. at 805. However, if in discharging his duty as thirteenth juror, the trial judge makes comments which indicate that he has misconceived his duty or clearly has not followed it, this court must reverse and remand the case for a new trial. *See Nashville, C. & St. L.R. Co. v. Neely,* 102 Tenn. 700, 52 S.W. 167 (1899); *Holden, supra* at 905.

. . . .

In *McLaughlin v. Broyles,* 36 Tenn. App. 391, 255 S.W.2d 1020 (1952), the plaintiffs brought suit for injuries sustained in an automobile accident. The jury returned a verdict in favor of the defendant.

In overruling plaintiffs' motion for a new trial, the court stated as follows:

In these cases where the evidence is in sharp conflict the Court does not feel that he has a right to interfere with the verdict of the jury, and overrules the motions.

*Id.* 255 S.W.2d at 1022.

From the beginning, it appears that the trial judge was being deferential to the jury and pointing out to counsel that earlier the jury had heard the same arguments. The court observed that the jury wanted to be sympathetic to the plaintiffs and that counsel for plaintiffs "did a good job" in trying the case. The best the court could say was "I'm not inclined to interfere with the verdict of the jury, and I approve the verdict of the jury." . . . .

. . . .

> Because of these seemingly harmless but unfortunate remarks,
> this case must be retried. To avoid the recurrence of a retrial
> under such circumstances, we strongly suggest that when a trial
> judge overrules a motion for new trial, that he simply state that
> he has reviewed the evidence relevant to the issues and
> approves the verdict. Anything more unnecessarily runs the
> risk of an unwanted new trial.

*Miller,* 873 S.W.2d at 346-47,349.

The present record indicates that the Trial Judge did review the evidence and did approve the verdict of the jury without any expression which would invalidate his approval.

In *James E. Strates Shows, Inc. v. Jacobik,* Tenn. 1977, 554 S.W.2d 613, the Supreme Court quoted with approval the following:

> Where the motion for a new trial asserts that the verdict was
> contrary to the weight of the evidence it is the duty of the trial
> judge to weigh the evidence and determine whether it
> preponderates against the verdict, and if so, to grant a new trial.
> *Vaulx v. Tennessee Central Railroad Company,* 120 Tenn. 316,
> 108 S.W. 1142 (1907).

It appears that the Supreme Court has approved the standard mentioned in the order of the Trial Court.

It is true that there is a minuscule technical separation between "preponderates in favor of" and "does not preponderate against." The line of distinction is "equipoise." However, in the light of the quoted holding of the Supreme Court, this Court is unwilling to hold that the choice of words by the Trial Court was sufficient to indicate that he disagreed with the verdict but "went along with the decision of the jury."

No error is found in the function of the Trial Court as "thirteenth juror."

*-Third Issue: Support for Amount of Verdict-*

The damages claimed and shown by plaintiff totaled $352,272. Defendant's witness explained that, because of the cancellation of the Sholodge franchise, it was necessary for

defendant to affiliate with another franchise group or chain of motels; and that, in order to enter another group, it was necessary to completely refurbish the motel to the satisfaction of the group. The cost of refurbishing was shown to be $327,272, the affiliation fee $25,000, and the advertising of the new name of the motel - $5,000.00, a total of $357,272. The jury awarded $327,272.

Plaintiff asserts that these damages are not authorized by paragraph 13(d) of the Sholodge agreement quoted above. Said paragraph states mandatory requirements enforceable by Sholodge, but does not include changes necessary to affiliate with another franchise group. The failure to include in a contract every type of damage for which recovery can be had does not exclude such omitted damages, if shown to be reasonably within the contemplation of the contracting parties. *Hawkins v. Reynolds,* 62 Tenn. App. 686, 467 S.W.2d 791 (1971).

Plaintiff next insists that it is entitled to some mitigation of the costs of refurbishing because the next necessary refurbishing was thereby postponed. This is a reasonable argument, but is not supported by any evidence.

Plaintiff complains that the expenses shown by defendant were not shown by competent evidence to be reasonable. The qualifications of defendant's witness were not questioned in the Trial Court, either during the trial or upon motion for new trial. Such objection cannot be presented for the first time on appeal. T.R.A.P. Rule 3(e).

Plaintiff argues that the damages shown by defendant are not attributable to the breach or cancellation of the franchise agreement by plaintiff. It is clear from the evidence that an active affiliation with a franchise group is a virtual necessity for the successful operation of a motel. The loss of the privileges and advantages of a Sholodge franchise made it necessary for defendant to seek another like affiliation.

The amount of damages rests in the sound discretion of the jury. *Railroad v. Deakins,* 107 Tenn. 522, 64 S.W. 477 (1901).

-12-

The amount of damages fixed by the jury and approved by the Trial Judge will not be disturbed on appeal unless a violation of discretion by the jury is shown. *Ellis v. White Freightliner Corp.,* Tenn. 1980, 603 S.W.2d 125; *D.M. Rose & Co. v. Snyder,* 185 Tenn. 499, 206 S.W.2d 897 (1947); *Strother v. Lane,* Tenn. App. 1976, 554 S.W.2d 631.

Exact justice is not always attained, and the law does not require exactness of computation of damages. *Cummins v. Brodin,* Tenn. App. 1983, 667 S.W.2d 759.

No reversible error is found. The judgment of the Trial Court is affirmed. Costs of this appeal are taxed against the plaintiff-appellant. The cause is remanded to the Trial Court for any necessary proceedings.

Affirmed and Remanded.

                              _____

                              HENRY F. TODD
                              PRESIDING JUDGE, MIDDLE SECTION

CONCUR:

_____
SAMUEL L. LEWIS, JUDGE

_____
WILLIAM C. KOCH, JR., JUDGE